**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 97-30847

---

HENRY J. READ; MICHAEL O. READ, as Trustees of
the A. Louis Read Testamentary Trust,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA, through the Department
of Treasury, Internal Revenue Service, ET AL.,

Defendants,

PATRICIA I. READ,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

March 9, 1999

Before POLITZ, DAVIS, and DUHÉ, Circuit Judges.

PER CURIAM:

Henry J. Read and Michael O. Read, as trustees of a Louisiana spendthrift

trust denominated the A. Louis Read testamentary Trust, appeal the judgment

rendered in this interpleader case which originally was filed by the Trustees in

Louisiana state court. The action was removed by the United States of America through the Department of Treasury, Internal Revenue Service, after being consolidated with three other state court cases filed by Patricia I. Read, the ex-wife and judgment creditor of Stephen L. Read, who is another defendant and one of several beneficiaries of the Trust.

Following a bench trial, the district court held that (1) Patricia is entitled to seize Stephen's interest in the Trust; (2) the tax lien is effective against his Trust interest; (3) the privileges created by operation of law for Patricia's judgments prime the tax lien; (4) the Trustees are discharged from liability to, *inter alia*, Patricia and Stephen, and the government in regard to the funds deposited into the registry of the court; (5) the Trustees cannot recover attorneys' fees from the interpleaded funds but can recover from Stephen's interest in the Trust any such fees that are directly attributable to the interpleader, but only after other claims have been satisfied; and (6) costs of the interpleader are payable from the interpleaded funds. Additionally, the court <u>directed</u> the Trustees to make distributions to Patricia – and, after her claims are satisfied, to the government – "immediately upon being authorized to make a distribution to Stephen under the terms of the Trust" but in doing so "to ensure that the stream of income of other beneficiaries under the Trust is not impeded, impaired or negatively affected by

2

these distributions."[1]  In ruling that Patricia and the government could seize Stephen's interest in the Trust, and in ordering the Trustees to make distributions to those creditors as soon as the Trustees were authorized by the Trust to make distributions to Stephen, the court relied in large part on section 2005[2] of the Louisiana Trust Code[3] and section 6321 of the United States Internal Revenue Code.[4]  Concluding that, in several important respects, the district court misapprehended the nature of Stephen's "interest in trust income and principal,"[5] particularly the extent to which the timing of his receipt and enjoyment of his interests are entirely dependent on the discretion of the Trustees, and overlooked section 2115 of the Trust Code,[6] we modify, and as modified affirm.

## I.

---

[1] **Read v. United States**, No. Civ. 95-4036, 1997 WL 459877, at *5, *8 (E.D.La. Apr. 21, 1997).

[2] La.Rev.Stat.Ann. § 9:2005 (West 1991).

[3] La.Rev.Stat.Ann. § 9:1721, *et seq.* (West 1991); see § 1721 ("This Chapter shall be known and may be cited as the Louisiana Trust Code.").

[4] 26 U.S.C. § 6321.

[5] Section 2005, Louisiana Trust Code.

[6] "If discretion is conferred upon a trustee with respect to the exercise of a power, its exercise shall not be subject to control by the court, except to prevent an abuse of discretion by a trustee." Section 2115 Louisiana Trust Code.

FACTS AND PROCEEDINGS

A.   Background

Settlor was survived by his wife, Nathalie Owings Read, and their four children, all majors,[7] one of whom is Stephen, and another of whom – Michael O. Read – succeeded his mother as co-Trustee and in that capacity is an appellant herein.  In his validly executed and duly probated testament Settlor created the Trust, designating his wife and their four children as beneficiaries, and appointing his wife and Henry J. Read as co-Trustees.  With the exception of certain automobiles, stock in Subchapter S corporations, and policies of insurance on the widow's life, Settlor's entire estate was put in trust.

Settlor's testamentary plan, as embodied in the Trust, reflects his manifest determination to minimize the amounts and postpone the payment of federal estate taxes,[8] and to control Stephen's legitime and his rights to deal with and enjoy it.[9]

_____

[7] Michael Owings Read, Susan Louise Read Johnson, Carolyn Mary Read Simmons, and Stephen Louis Read.

[8] To minimize estate taxes and postpone their payment as long as possible, the Trust specified two sub-trusts, designated as the Marital Deduction Sub-Trust and the Credit Shelter Sub-Trust.  Typically, the Credit Shelter Trust was funded with property having a value equal to the maximum value in property that could be "sheltered," i.e., disposed of without incurring Uniform Transfer Tax (formerly Gift Tax and Estate Tax) by virtue of the Unified Credit.  The Marital Deduction Trust was funded with the residuum of Settlor's estate which, by virtue of the postmortem exercise by a succession representative of the Qualified Terminable Interest Property election, could take advantage of the unlimited marital deduction from transfer taxes for property donated to

4

Several testamentary provisions confirm Settlor's intention to leave Stephen only his bare legitime and to subject that legacy to the maximum restraints, restrictions, and burdens that the law would permit.[10] In the particular legacy of the insurance policies on Nathalie's life, for example, Settlor left Stephen only an undivided 13% interest (rounded up from his 12.5% share of the forced portion of Settlor's estate) but left the remaining 87% equally to Stephen's three siblings, 29% each. In like manner, Stephen was bequeathed only his one-eighth legitime share of the residue of Settlor's estate, and even that was left in trust for Stephen's lifetime (the maximum allowed term), burdened by Nathalie's life income interest,

the surviving spouse in trust or usufruct. Settlor's testament specifies that Nathalie is the initial income beneficiary of the Trust for her lifetime. (She subsequently renounced her income interest in the Credit Shelter Trust but not in the Marital Deduction Trust.)

[9] Although significant only by way of background and understanding of the Settlor's motivation and the scheme of his testament, Stephen's profligacy is more than amply demonstrated in the record on appeal and in the appellate briefs, removing any doubt as to the Settlor's determination to leave Stephen no more than the absolute minimum share as dictated by the Constitution and Civil Code of Louisiana at the times of the confection of the will and Settlor's death, and to deny him enjoyment and control over that forced legacy to the fullest extent and for the longest time permitted by law.

[10] As Settlor was survived by four children, the forced portion of his estate was one-half, and each child's legitime was one-fourth thereof, or one-eighth (12.5%) of the net estate. As a result of constitutional amendments and legislative enactments post-dating Settlor's death, Louisiana's forced heirship law has been so substantially revised that the remaining vestiges constitute a mere alimony or support system for children who are either under 24 years of age or handicapped. Under current law, none of Settlor's children would have been forced heirs. See, e.g., La. Civ. Code Ann. art. 1493 (West 1998).

and as a spendthrift trust, i.e. subject to the maximum restraints on alienation, both voluntary and involuntary, that the Trust Code allows. In contrast, Stephen's siblings were designated as the equal beneficiaries of the remaining seven-eighths interest in the Trust, likewise subject to their mother's income interest for life; but – unlike Stephen's – their interests are to be delivered to them, free of trust, at their mother's death.

In addition to specifying that "[t]his Trust shall continue as to the interest of Stephen . . . for his lifetime," the Settlor continued with this directive on the distribution of trust assets to Stephen:

> Distributions to Stephen. . . . After the termination of my wife's income interest, the remaining Trustee shall <u>pay</u>, or apply the net income of the trust attributable to Stephen's legitime to or for his benefit <u>at least annually</u> or at such more frequent intervals as the Trustee deems fit. Income not attributable to his legitime may be distributed or accumulated in such amounts and at such times as the Trustee determines in the Trustee's sole discretion. <u>After the termination of my wife's income interest</u>, the Trustee may invade and distribute to or apply for the benefit of Stephen such portion or portions of his share of the accumulated income, if any, principal or both, <u>at such time and in such amounts as the Trustee deems necessary, advisable or proper</u>. After the termination of my wife's income interest, the Trustee may terminate the trust or may distribute any part of the property held in trust if the Trustee considers such action to be in the best interest of Stephen, considering his demonstrated ability to handle money wisely, his judgment, prudence and discretion, and any other factors the Trustee may consider relevant. A partial termination of Stephen's interest in the trust shall not affect his right to receive distributions of income from the trust

attributable to his share of the principal remaining in trust. [Emphasis added.]

Consistent with Settlor's approach to the minimization of Stephen's legacy, the Trust specifies that if Settlor is predeceased by Nathalie, seven-eighths of his estate would pass to Stephen's three siblings <u>free of trust</u>, but Stephen would receive only "his legitime, to be held in trust for his lifetime."

In sum, the clearly demonstrated intent of Settlor as to Stephen was to comply with Louisiana's law of forced heirship but, in essence, to restrict Stephen's access to that mandatory legacy for the rest of his life.[11] The only exceptions permitted by the trust instrument – distributions of income more frequently than once a year and invasion and distribution of principal prior to Stephen's death – were conditioned on the exercise of discretion by the Trustees.

B.    Proceedings

After her divorce from Stephen, Patricia obtained two Florida judgments

_____

[11] At all times relevant to this case, Louisiana gave each child the right to claim a share – his legitime – of the forced portion of each parent's estate but allowed the parent to leave a child's legitime (1) in trust, (2) for his lifetime, (3) burdened with a lifetime usufruct or income interest in trust in favor of the surviving parent, and (4) subject to restraints that would deprive the forced heir of the right voluntarily to dispose of or encumber such interests or to have it seized involuntarily by his creditors; as long as (a) the net <u>income</u> of the Trust that is not otherwise payable to the surviving parent is paid at least annually to the forced heir, and (b) the <u>principal</u> of the Trust is distributed to the forced heirs' own heirs, legatees, or assignees at the death of the forced heir. <u>See</u> § 1841, Louisiana Trust Code. The Settlor did this with Stephen's one-eighth forced share.

against him which subsequently were made executory by the Louisiana court. She then filed a third Louisiana suit, a garnishment proceeding, and had a notice of seizure and interrogatories served on the Trustees. Shortly after responding to these, the Trustees instituted yet another proceeding in state court, a concursus action, depositing funds which they identified as income that had accrued to Stephen in the Credit Shelter Trust, and naming as defendants Stephen, Patricia, and – because of a notice received by the Trustees of the filing of a federal tax lien – the government. Patricia's three state court actions were then consolidated with the Trustees' concursus proceeding, after which the government removed same to federal court. Nathalie intervened to protect her interest in the Marital Deduction Trust. The trial court entered the judgment as above noted, denied a motion for new trial, and the Trustees timely appealed.

## II.
## ANALYSIS

A.      Standard of Review

In an appeal from a judgment rendered after a bench trial, we review the court's findings of fact for clear error and its determinations of questions of law *de novo*. As the discrete facts of this case are essentially uncontested, our review of the judgment is plenary. This is especially true today as our review almost

8

exclusively implicates the application of state law.[12]

B.      Framework of Applicable Law

1.      Constitution of the State of Louisiana of 1974

The last sentence of section 5(B) of Article XII of Louisiana's current constitution continues the pre-existing authorization for enactment of laws establishing trusts in Louisiana and, particularly pertinent to the instant appeal, placing the legitime of a forced heir in trust.[13]

2.      Louisiana Trust Code

a.  General dispositions: interpretation; definitions

Given the nature of the case at bar, implicating as it does the efforts of Patricia, as an alimony judgment creditor, and the government, as the holder of a tax lien, to force the involuntary alienation of, indeed seize, Stephen's interests in the Trust, a thorough review of the structure of the Trust Code and the framework that it provides for analyzing the issues presented by this appeal is imperative.[14]

---

[12] See **Farm Credit Bank of Texas v. Guidry**, 110 F.3d 1147 (5th Cir. 1997).

[13] "Trusts may be authorized by law and the forced portion may be placed in trust." La. Const. of 1974, art. XII, § 5(B).

[14] As originally redacted and submitted in 1962 to the Legislature by the Louisiana State Law Institute, and adopted by the Legislature in 1964, the Trust Code represented not just a major, cohesive piece of legislation in Louisiana's Civil Law and code tradition; it represented the giant step of fitting the round peg that is the Anglo-American trust into the square hole that is Civil Law tradition, which historically did not know the private

Judicial review of issues of Louisiana trust law, like such review of all issues of Civil Law, begins not with an examination of jurisprudence but with the plain wording of the Trust Code, read as a whole and interpreted according to its own rules of construction.  Section 1724 provides:

Construction of Code

The provisions of this Code shall be accorded a liberal construction in favor of freedom of disposition.  Whenever this Code is silent, resort shall be had to the Civil Code or other laws, but neither the Civil Code nor any other law shall be invoked to defeat a disposition sanctioned expressly or impliedly by this Code.

In Part II, Creation of the Trust, the initial section contains a definition of a trust unique to Louisiana: "A trust . . . is the relationship resulting from the transfer of title to property to a person [the trustee] to be administered by him as a fiduciary for the benefit of another."[15]  In thus defining a trust, Louisiana stands apart from common law jurisdictions.  With title to trust property vested in the trustee alone,

_____

trust, and Louisiana tradition, which knew only the most rudimentary of private trusts. Adoption of the Trust Code and the enabling amendments to Louisiana's Constitution was anything but an incorporation by reference of the Anglo-American system of private trusts; rather, it was the culmination of a lengthy legal catharsis that produced a civilian-like code (albeit integrated into the Louisiana Revised Statutes) which is truly *sui generis* in the field of trust law.  Consequently, except to the extent some specific provisions of the Trust Code restate particular maxims or canons of Anglo-American trust law, common law jurisprudence and learned treatises on the subject are at best instructive by analogy.

[15] Section 1731, Louisiana Trust Code (emphasis added).

only the trustee has a civilian "real right" in trust property. Conversely, the

beneficiary has no title to or ownership interest in trust property, but only a civilian

"personal right," *vis-a-vis* the trustee, to claim whatever interest in the trust

relationship the Settlor has chosen to bestow.[16] This personal right, as confected

by the Settlor, is further tempered by mandatory provisions of law. Among those

provisions most central to the instant appeal are the rules governing the legitime in

trust[17] and those governing the beneficiary's right to alienate his interest in the

trusts. Of particular note is the section listing the only three exceptions to the

power of a settlor to restrict involuntary alienation of the beneficiary's interest.[18]

Section 1736 of the Trust Code states that "[a] trust or a disposition in trust

may be made subject to any condition not forbidden in this Code and not against

public order or good morals." Emphasizing and supplementing this authorization

for a settlor to make conditional dispositions, section 1737 notes that "[a] settlor

may dispose of property in trust to the same extent that he may dispose of that

property free of trust and to any other extent authorized by this Code." Continuing,

---

[16] Even though a beneficiary's interest in the trust, as distinct from property of the trust (the "trust estate"), is sometimes referred to as "an interest in property," see, e.g., **Reynolds v. Reynolds**, 388 So.2d 1135, 1142 (La. 1980), such interest is nevertheless not a "real right" in the Civil Law sense.

[17] Sections 1841-47, Louisiana Trust Code.

[18] Section 2005, Louisiana Trust Code.

11

section 1753 augments the liberal construction mandate of section 1724 by acknowledging that no particular magic words are necessary to create a trust and that "[a] trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions if the trust instrument is susceptible of such an interpretation."

Section 1781's definition of the trustee as the "person to whom title to the trust property is transferred to be administered by him as a fiduciary" confirms that title to all trust property is vested in the trustee alone. Juxtaposed to this definition of the trustee is section 1801's definition of the beneficiary as "a person for whose benefit the trust is created." Notably, no mention of title or ownership of trust assets, either legal or beneficial, appears in the definition of the beneficiary.

Section 1805 provides that "[t]here may be one beneficiary or two or more beneficiaries as to income or principal or both. There may be separate beneficiaries of income and principal, or the same person may be a beneficiary of both income and principal, or the same person may be a beneficiary of both income and principal, in whole or in part." The two succeeding sections – 1806 and 1807 – amplify those possibilities by specifying that there may be several concurrent beneficiaries of income or principal or both, and that several beneficiaries may be designated to enjoy income successively. Part II, Subpart I contains the rules

12

governing the legitime in trust and specifies those provisions that such a trust may contain to qualify.[19]

b. Interest of the beneficiary

Central to the disposition of this appeal is an understanding of the nature and extent of Stephen's interest in the trust, for that is what Patricia and the government seek to alienate involuntarily, and obviously that is the most that either can cause to be alienated. Part III of the Trust Code addresses the interest of the beneficiary. As Stephen is both an income and principal beneficiary, we must perforce examine the Trust Code's treatment of each of these interests.

In Subpart A of Part III, section 1961 speaks to the nature of the interest of an income beneficiary. The first paragraph acknowledges that an income interest in trust may be absolute or conditional and may be for the life of a beneficiary or for a lesser term, certain or uncertain. The second paragraph acknowledges the authority of the settlor to allocate a portion of trust income to an income beneficiary. Section 1964 specifies that an interest in trust income terminates at the death of the income beneficiary unless the trust instrument calls for an earlier termination. In Subpart B of Part III, addressing the interest of the principal beneficiary, section 1972 provides that such a beneficiary's interest vests in his

_____

[19] See supra n.10.

13

heirs or legatees at his death.

        c. Alienation of the interest of the beneficiary

Subpart D of Part III is composed of seven sections and addresses another matter central to the instant appeal: alienation of the beneficiary's interest. In keeping with the structural recognition that a Louisiana trust is a relationship, and that the trustee, and not the beneficiary, is the sole owner of trust property, section 2001 speaks to alienation of the beneficiary's interest in the trust, not alienation of trust property. It states the general rule of voluntary alienation: the beneficiary may "transfer or encumber" all or part of his interest in the trust "unless the trust instrument provides to the contrary."[20] Section 2002 follows with the express identification of that which is implicit in the "unless" clause of section 2001, i.e., a stipulation "to the contrary." Section 2002 authorizes a settlor to prohibit both voluntary and involuntary alienation of the beneficiary's interest in the trust. Under this section, the settlor is free to impose restraints on voluntary alienation, but his ability to restrict involuntary alienation is subject to limitations as specified in the remaining sections of Subpart D. Section 2004 limits the settlor's authority to prohibit involuntary alienation, that is, seizure of the beneficiary's interest by his creditors, to those instances in which the settlor also prohibits voluntary alienation.

---

[20] Section 2001, Louisiana Trust Code (emphasis added).

14

Subpart D clearly reflects the overall public policy of the Trust Code favoring freedom of disposition by the settlor.  Together, the seven sections of Subpart D give the settlor the option either to remain silent and thereby allow unfettered alienation by the beneficiary, thus exposing the interest of the beneficiary to transfer, encumbrance, or seizure; or specify that the beneficiary's interest shall not be transferred or encumbered or seized by creditors, that is, neither voluntarily nor involuntarily alienated.  To proscribe all alienation the settlor may either spell out such restraints in the trust instrument or employ the shorthand method authorized in section 2007 and simply declare that the interest of the beneficiary shall be held subject to a "spendthrift trust."  For purposes of the Trust Code, either method is sufficient to restrain alienation to the maximum extent permitted by Subpart D.

As made manifestly clear by section 2005, however, maximum extent is not synonymous with unlimited.  This section provides, in pertinent part:

> Notwithstanding any stipulation in the trust instrument to the contrary, the proper court, in summary proceedings to which the trustee, the beneficiary, and the beneficiary's creditor shall be parties, may permit seizure of a portion of the beneficiary's interest in trust income and principal in its discretion and as may be just under the circumstances if the claim is based upon a judgment for:
>
> > (1) alimony, or maintenance of a person whom the

15

beneficiary is obligated to support; . . . .[21]

Within the structure of the Trust Code, section 2005 specifies three exceptions to the settlor's broad freedom to innoculate the interest of the beneficiary against both voluntary and involuntary alienation. Section 2005 must be narrowly construed. Thus, in parsing its language to determine what appropriately may be seized by, *inter alia*, an alimony judgment creditor – notwithstanding any "contrary" "stipulation in the trust instrument" – two determinations are key: (1) just what is it that may be seized and (2) just what is it that the stipulation in the trust instrument is contrary to?

The answer to the first inquiry is clear from the plain and unambiguous wording of section 2005: that which may be seized is "the beneficiary's interest in trust income and principal." The court may not permit direct seizure of trust property, of which, as noted, the <u>trustee</u> is the sole owner. The only thing the court may authorize one of the specially favored creditors to seize is the beneficiary's personal right – his interest in the trust relationship. When that is done, the creditor

---

[21] Section 2005, Louisiana Trust Code. Subsections (2) and (3) of section 2005, neither of which is implicated in this case, allow seizure of a beneficiary's interest, notwithstanding stipulations in the trust instrument that restrain involuntary alienation, when a creditor holds a judgment for necessary services rendered or otherwise furnished to the beneficiary or a person whom the beneficiary is obligated to support, or for torts committed by the beneficiary or by one for whom the beneficiary is responsible.

steps into the shoes of the beneficiary – whatever size and shape they may be, as dictated by the trust instrument.

The answer to the second question (what is it that the "stipulation in the trust instrument"[22] is contrary to?) can be nothing other than "a restraint upon involuntary alienation by a beneficiary,"[23] i.e., a section 2002 stipulation prohibiting involuntary alienation – seizure – of "the beneficiary's interest in trust income and principal."[24] Clearly then, the court is not authorized by section 2005 to disregard any other provision or stipulation, whether in the trust instrument or in law, to permit seizure of the interest of the beneficiary.

### d. Duties and powers of the trustee

With this construction of Subpart D on antialienation firmly in mind, we now address PART V. DUTIES AND POWERS OF THE TRUSTEE. In keeping with section 1724's fundamental policy favoring freedom of disposition, section 2061 prescribes:

> The nature and extent of the duties and powers of a trustee are determined from the provisions of the trust instrument, except as otherwise expressly provided in this Code [mandatory provisions], and, in the absence of any provisions of the trust instrument, by the

---

[22] Section 2005, Louisiana Trust Code.

[23] Section 2002, Louisiana Trust Code.

[24] Section 2005, Louisiana Trust Code.

17

provisions of this Part and by law [suppletive provisions].

As with the interest of the beneficiary, and the rights and limitations on the beneficiary's use and enjoyment of his interest in the trust, the powers and duties of the trustee are determined by the settlor. With the sole exception of a provision that would dispense with the duty of loyalty to the beneficiary,[25] the latitude of the settlor in vesting the trustee with powers and duties is virtually boundless. Indeed, to deviate from <u>duties</u> imposed by the settlor, the trustee must obtain consent from the beneficiary, which cannot be prospective and cannot limit the duty of loyalty.[26] To deviate from administrative and investment provisions of the trust instrument[27] or from the administrative provisions of the Trust Code,[28] the trustee must obtain judicial authority.

In contrast to the Trust Code's admittedly scant provision controlling deviation from the <u>duties</u> of the trustee, it contains no parallel provisions regarding <u>powers</u>. Lawful powers given to the trustee by the settlor are immutable; indeed, not even a court can control the trustee's exercise of <u>discretionary</u> powers or force

---

[25] Section 2062, Louisiana Trust Code.

[26] Section 2063, Louisiana Trust Code.

[27] Sections 2064 and 2066, Louisiana Trust Code.

[28] Section 2066, Louisiana Trust Code.

their exercise.[29]

e. Invasion of principal

Pertinent to this appeal are the two sections of <u>Subpart A</u> of <u>Part V</u> of the Trust Code that address invasion of principal.[30]  The first of these, section 2067, contains the limited list of occasions when the court may direct or permit a trustee to pay income or principal from the trust property.[31]  This list allows for court directed invasion of principal for the necessary support, maintenance, education, medical expenses, or the welfare of a beneficiary before the time he is entitled to such distributions.  We must note two important observations.  First, the finite list warranting invasion of principal is limited to those instances involving the objective needs <u>of the beneficiary only</u>, not the needs of any creditors, even a former spouse or other dependent, and then only if such invasion will not impair the interest of any other beneficiary.  A comparison of section 2067 and section 2005 reveals that, whereas the court may authorize seizure of the beneficiary's

---

[29] <u>See</u> § 2115, Louisiana Trust Code.

[30] <u>See</u> §§ 2067 and 2069, Louisiana Trust Code.  "Invasion of principal," a term of art in trust law, refers to the act of a trustee in removing assets from the trust and expending them for purposes of the trust or distributing them to a beneficiary or for his benefit, <u>in advance of the time that property of the trust would ordinarily be removed and distributed according to the general provisions of the trust instrument or suppletive provisions of law</u>.

[31] Section 2067, Louisiana Trust Code.

interest by an alimony judgment creditor, the court is not authorized to <u>direct</u> the trustee to <u>invade</u> principal and <u>distribute</u> trust property to such a judgment creditor unless the beneficiary himself would be entitled to enjoy such trust property. It appears indisputable that the authority of the court to disregard restrictions on alienation, and to permit seizure of the interest of the beneficiary by an alimony judgment creditor, does not include the authority to order a trustee to invade and distribute principal to a judgment creditor when, as here, the trust instrument leaves invasion of principal to the unfettered discretion of the trustee.[32] Second, invasion cannot be ordered by the court for any reason, even those on section 2067's permitted list, before such time as the beneficiary would be entitled to demand distribution of trust property – and never if invasion would impair the interest of another beneficiary.

### f. Attorneys' fees and costs

A number of Trust Code provisions bear on the issue of recovery of attorneys' fees and costs incurred by the Trustees in this litigation. Within <u>Subpart B</u> of <u>Part V</u>, outlining the duties of the trustee, are found (1) section 2090, which contains the well-known "prudent man" rule of trustee administration;

---

[32] <u>See</u> § 2115, Louisiana Trust Code.

(2) section 2091, which expresses the duty of the trustee to take, keep control of, and preserve trust property; and (3) section 2093, which commands the trustee to defend actions that may result in a loss to the trust estate, unless so doing would not be reasonable.  Subpart C addresses the powers of the trustee and includes, *inter alia*, the aforementioned section 2115 which exempts the exercise of discretionary powers of the trustee from court control except to prevent an abuse of discretion by a trustee, and section 2117 which, as a complement to section 2093's command to defend actions, authorizes the trustee to incur expenses necessary to carry out the purposes of the trust.  Then, in Subpart D of Part VI, section 2191 gives the trustee the right to be indemnified from trust property for all properly incurred expenses; and, in Part X, section 2241 authorizes the trustee to select an attorney to represent the trust if the trust instrument fails to do so or if the lawyer named fails or ceases to serve.  When read *in pari materia*, these provisions form the matrix for judicial determination of the trustees' right of reimbursement for attorneys' fees.

    3.    Internal Revenue Code

Section 6321 is the principal section of the I.R.C. implicated in this appeal. It provides that the amount of unpaid taxes constitutes a lien in favor of the government on all property and rights to property belonging to the tax debtor.  To affect movable (personal) property, such as the interest of a beneficiary of a

21

Louisiana trust, a notice must be filed in the political subdivision in which the residence of the taxpayer is located.[33] As a general rule, competition for priority between tax liens and other encumbrances is determined on the basis of first in time, first in right.[34] The district court made the conclusional statement that the federal tax liens attached to Stephen's right to receive income and principal from the Trust, presently and in the future. The court recognized Patricia's ability to avoid the spendthrift provisions of the Trust by qualifying under section 2005 of the Trust Code because she is a member of one of the favored classes of creditors that the court may permit to seize the interests of the beneficiary, notwithstanding stipulations in the trust instrument prohibiting involuntary alienation. The federal government, however, is not a member of any of the favored classes of creditors identified in section 2005. The district court did not enforce the spendthrift provisions of the Trust against the federal tax lien. Rather, the court finessed the determination of a legal basis for doing so by citing the truism which allows that such a lien can reach every interest in property that a taxpayer may have.[35] This

---

[33] 26 U.S.C. § 6323(f)(A)(ii) & (f)(2)(B).

[34] **United States v. City of New Britain**, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

[35] See **United States v. National Bank of Commerce**, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

observation begs the question whether Stephen's beneficial interest in the Trust, subject as it is to antialienation provisions, can be seized under a federal tax lien in disregard of such stipulations. As we note below, however, this aspect of the district court's judgment is not challenged on appeal and we opt not to address it *sua sponte*.

C.    The Trust Instrument

Within the framework of relevant provisions of the Louisiana Constitution, Louisiana Trust Code, and applicable I.R.C. provisions, we examine the overall structure and the applicable provisions of the trust instrument itself, here, the Settlor's testament. In broad overview, to the extent relevant to Stephen and this appeal, the Trust expressly includes all mandated requirements to qualify as a legitime trust,[36] for the longest permissible term,[37] with principal retained in trust for the longest permissible time,[38] burdened with an initial income interest for the lifetime of his mother, Nathalie,[39] and – after her death or any earlier termination

---

[36] See §§ 1841-47, Louisiana Trust Code.

[37] See § 1841(3), Louisiana Trust Code.

[38] See § 1841(4), Louisiana Trust Code.

[39] See § 1844, Louisiana Trust Code.

23

of her income interest – with income distributed at least annually,[40] and subject to the maximum permitted restraints on alienation of his legitime interest in trust.[41] Also pertinent here is the provision in the trust instrument that, after the termination of Nathalie's income interest (which already has occurred in the Credit Shelter Trust by virtue of Nathalie's renunciation of her income interest therein), the Trustees may invade principal on Stephen's behalf to the extent the Trustees deem same necessary, advisable, or proper.[42] By electing not to specify any objective standards to guide or restrict the exercise of the Trustees' discretion to invade principal, and instead conditioning invasion on nothing more than the determination of necessity, advisability, and propriety, Settlor fully vested the Trustees with complete discretion to determine when and whether to remove trust property from the Trust and distribute it to the beneficiary or for his well-being.[43]

In the trust instrument the Settlor restricted the rights of all beneficiaries by restraining their legal right to alienate their respective interests, either voluntarily

_____

[40] See § 1841(1), Louisiana Trust Code.

[41] See § 1843, Louisiana Trust Code; see also §§ 2001-07. The Trustees have stipulated that the entirety of Stephen's interest in the Trust is legitime.

[42] Cf. § 2068(B), Louisiana Trust Code.

[43] See **id**.

24

or involuntarily, to the fullest extent possible.[44]   The Settlor did so by taking advantage of the Trust Code's shorthand provision, simply stating that the "interest of the beneficiary shall be subject to the spendthrift provisions of Louisiana law."[45]

Stephen's interest in income and in principal of the Trust are: (1) entitlement of his heirs, legatees, and assignees to receive his interest in trust principal at his death (unless his mother is still living at that time, in which case such principal distribution is postponed until her death or the termination of her income interest in the Trust, or when some or all of his share of trust principal is invaded during his lifetime but after his mother's death); (2) present enjoyment of his interest in income of the Credit Shelter Trust but only to the extent of the mandatory single distribution per year (unless the Trustees in their discretion elect to distribute more frequently); and (3) a successor income beneficiary's interest in the Marital Deduction Trust, devoid of any enjoyment until the death of his mother as initial income beneficiary (or her earlier renunciation of such interest).[46]

---

[44] See § 2002, Louisiana Trust Code.

[45] See § 2007, Louisiana Trust Code; see also § 1725(7) ("'Spendthrift trust,' when used without other qualifying words, means a trust under which alienation by a beneficiary of an interest in income or principal is restricted to the full extent permitted by this Code.").

[46] See § 1807, Louisiana Trust Code ("Several beneficiaries may be designated to enjoy income successively."); see also § 1725(2) ("'Income beneficiary' means a beneficiary to whom income is payable . . . conditionally, or in the future. . . .").

25

D.      Interplay of Operable Facts, Provisions of the Trust Instrument, and Applicable Law

With this framework for our appellate review, we may now appropriately address the rulings of the trial court.

1.      Patricia I. Read is recognized as an alimony judgment creditor under La. Rev. Stat. 9:2005, and as such entitled to seizure of Stephen L. Read's beneficiary interest in the A. Louis Read Testamentary Trust.

This ruling is not contested on appeal.

2.      Seizure of the entire amount of the alimony judgments is found to be just under the circumstances.

This ruling is not contested on appeal.

3.      The seizure of the beneficial interest of Stephen L. Read by Patricia I. Read is effective as of August 4, 1995.

This ruling is not contested on appeal.

4.      The tax lien of the United States of America . . . is effective as to Stephen L. Read's entire interest in the A. Louis Read Testamentary Trust, effective January 21, 1997.

This ruling is not contested on appeal.

5.      Patricia I. Read's claim is entitled to priority over the Internal Revenue Service's claim.

This ruling is not contested on appeal.

6.      The Trustees are hereby discharged from any liability to the named

> defendants as to the funds on deposit in the Court's registry.

This ruling is not contested on appeal.

7. <u>The Trustees are to make distributions directly to Patricia and the government, immediately upon being authorized to make a distribution under the terms of the Trust, from income and principal, until the respective claims are satisfied.</u>

This is the key contested issue we consider today. The word authorized in the phrase "immediately upon being <u>authorized</u> to make a distribution under the terms of the Trust," is at the heart of this preeminent issue.

As noted above, even though the claims of Stephen's two creditors herein are unaffected by the spendthrift provision of the Trust, their seizures affect only Stephen's interest in the Trust and do not attach directly to the trust estate. For emphasis we repeat, Stephen has both income and principal interests in the Trust: (1) an undivided one-eighth <u>current</u> income interest in the Credit Shelter Trust; (2) an undivided one-eighth <u>successive</u> income interest in the Marital Deduction Trust, under which Nathalie is the initial income beneficiary for life; (3) an undivided one-eighth lifetime principal interest in the Credit Shelter Trust, i.e., an interest that subsists but is not distributable until his death, unless the Trustees in their sole discretion elect to invade and distribute such principal in whole or in part, prior to his death; and (4) an undivided one-eighth lifetime principal interest in the

27

Marital Deduction Trust, identical to his principal interest in the Credit Shelter Trust, except that the Trustees do not have even discretionary authority to invade his principal interest in that subtrust prior to Nathalie's death. Therefore, even disregarding the spendthrift provisions, Stephen's only interest in the Trust – income or principal – that, prior to his death, is not subject to Trustee discretion is one-eighth of the net income from the Credit Shelter Trust, and even that is subject to Trustee discretion as to distributions more frequently than once annually, and one-eighth of the income of the Marital Deduction Trust, but only after Nathalie's death. On the other hand, the Trustees are authorized under the terms of the Trust to make discretionary distributions to Stephen of his entire one-eighth principal interest in the Credit Shelter Trust and, after Nathalie's death, of his entire one-eighth principal interest in the Marital Deduction Trust as well. That authorization is solidly grounded in the unfettered discretion that Settlor vested in the Trustees through express provisions of the Trust.

In the careful words of the trust instrument, the power of the Trustees to invade and distribute principal is to be exercised "at such times and in such amounts as the Trustee deems necessary, advisable or proper" and, after the termination of Nathalie's income interest, only "if the Trustee considers such action to be in the best interest of Stephen, considering his demonstrated ability to handle

money wisely, his judgment, prudence and discretion, and any other factors the Trustee may consider relevant."

At the heart of this issue, then, is the critical inquiry whether any court can substitute its discretion for that which a settlor has vested exclusively in the trustee, and thereby force the premature distribution of trust property by distributing same not to the beneficiary but to his seizing creditors. We are persuaded that question must be answered in the negative.

We conclude that the district court abused its discretion when it ordered the Trustees to make distributions, whether of income or principal, "immediately upon being authorized" under the terms of the Trust to do so. This aspect of the judgment must therefore be modified to command the making of distributions directly to Patricia – and subsequently to the government – only at times when, under the terms of the Trust, Stephen becomes "entitled to the enjoyment of that income or principal, if the interest of no other beneficiary of the trust is impaired thereby."[47]

8.  <u>The Trustees are to ensure that the stream of income of other beneficiaries under the Trust is not impeded, impaired or negatively affected by these distributions</u>.

This ruling is not contested on appeal.

---

[47] Section 2067, Louisiana Trust Code.

29

9. <u>The Trustees' request for attorneys' fees is denied as to the interpleaded funds</u>.

This ruling is not contested on appeal.

10. <u>Those attorneys' fees directly attributable to this interpleader are to be paid out of Stephen L. Read's interest in the Trust after the satisfaction of the creditors herein</u>.

Given our reversal of the district court's ruling that the Trustees distribute Trust principal "upon being authorized" to do so, it is likely to be an extended period, if ever, before the claims of Patricia and the government are satisfied from Stephen's interest in the Trust. Further, the court's relegation of the claim for attorneys' fees to a rank junior to the claims of Patricia and the government, and its limitation of the source of funds to Stephen's interest, are without legal foundation and must be reversed.

Generally, "[a] trustee is entitled to reimbursement for his necessary and reasonable expenses incurred in the administration of his trust."[48] "A trustee is entitled to indemnity from the trust estate for expenses properly incurred by him in the administration of the trust, unless the trust instrument provides otherwise."[49] There is no contrary provision in the trust instrument at bar. We previously have

---

[48] George Gleason Bogert *et al*, <u>Trust & Trustees</u> § 975 (2d ed. rev. 1983).

[49] § 2191, Louisiana Trust Code.

30

noted those provisions of section 2093 of the Trust Code that command the trustee to defend actions that may result in a loss of the trust estate. The judicial assertion of claims by Patricia and the government clearly qualify as such. In addition to the provisions of section 2117 of the Trust Code, which authorize the trustee to incur expenses necessary to carry out the purposes of the Trust, several provisions of section 2156 of the Trust Code are applicable. For example, subsection A, addressing charges that <u>shall</u> be made against income, includes "(4) Court costs, attorney's fees, and other fees on other accountings or judicial proceedings if the matter primarily concerns the income interest, unless the court directs otherwise." Similarly, subsection C, addressing charges that <u>shall</u> be made against principal, includes "(5) Court costs, attorney's fees, and other fees on other accountings or judicial proceedings if the matter primarily concerns the principal interest, unless the court directs otherwise," and (6) Expenses incurred in maintaining or defending an action to construe the trust or to protect the trust or the trust property."[50] Patricia maintains that the phrase "unless the court directs otherwise" gives the court discretion to order payment of creditors ahead of payment of the Trustees' attorneys' fees. Assuming without deciding that this provision gives the district court discretion, in extraordinary or exceptional circumstances, to refuse to order

---

[50] Section 2156, Louisiana Trust Code.

31

recovery by the Trustees of their attorneys' fees until the seizing creditors have been paid in full, the court *à quo* made no findings or conclusions to justify this exercise of such discretion in contravention of the well-established general rule that the Trustees are entitled to reimbursement. We must conclude as a matter of law that the Trustees are entitled to recover their reasonable attorneys' fees, including those associated with this appeal, from the trust estate, ahead of Stephen's judgment creditors.

Also problematic is the court's limitation of the source of recovery of attorneys' fees to Stephen's interest in the Trust. Even though Stephen's creditors may seize no greater interest in the Trust than his, the Trustees' entitlement to reimbursement of attorneys' fees is not necessarily so limited. Although the Settlor could have created separate trusts for each beneficiary, he did not. Indeed, as noted, he did not create separate credit shelter and marital deduction trusts. Rather, Settlor created a single trust. Moreover, even though he decreed that the Trust be separated into two subtrusts, within each subtrust he merely assigned separate undivided interests in the single corpus.

We modify the judgment of the district court to the extent that it limits satisfaction of the Trustees' attorneys' fees to Stephen's interest in the Trust, and then only after satisfaction of the claims of Patricia and the government; and hold

that (1) such attorneys' fees may be recovered without regard to satisfaction of the claims of Patricia and the government, and (2) although recovery should be made first from Stephen's interest in the Credit Shelter Trust, if that should prove insufficient, the Trustees may complete such recovery next from the remaining assets of the Credit Shelter Trust, and finally from any remaining Trust assets; provided that, to the extent the Trustees shall have recovered any portion of their attorneys' fees from Stephen's siblings' interests in the Credit Shelter Trust, his interests in the Marital Deduction Trust shall be available for reimbursing the interests of his siblings. We leave to the fiduciary discretion of the Trustees the timing of any recovery of attorneys' fees from the assets of the Marital Deduction Trust.

11. <u>Costs of these proceedings are to be paid out of the interpleaded funds</u>.

We agree with this ruling of the district court. In doing so, however, we emphasize that this ruling should not be interpreted as a limitation; if the interpleaded funds should prove insufficient to cover all costs incurred at both the trial and appeals levels, the remainder may be recovered from future accruals of income to Stephen and, if that be insufficient, from his principal interest in the Trust, beginning with the Credit Shelter Trust.

III.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court to the extent it recognizes that (1) Patricia I. Read is an alimony judgment creditor entitled to seizure of Stephen L. Read's income and principal interest in the A. Louis Read Trust, free of restraints on involuntary alienation; (2) seizure of the entire amount of her alimony judgments is just under the circumstances; (3) her seizure became effective as of August 4, 1995; (4) the government's tax lien is effective as to Stephen's income and principal interests in the A. Louis Read Trust, free of restraints on involuntary alienation, as of January 21, 1997; (5) Patricia's rights as a seizing creditor of Stephen's interest in the Trust primes the government's lien thereon; (6) the Trustees are discharged from any liability to the named defendants as to the funds on deposit in the registry of the district court; (7) the Trustees are not entitled to recover attorneys' fees from the interpleaded funds; and (8) the costs of these proceedings are to be paid out of the interpleaded funds.

We modify the judgment of the district court regarding (a) distributions from the Trustees to Patricia and the government and (b) recovery by the Trustees of their attorneys' fees, as follows:

1. After deductions for costs of those proceedings, all remaining funds held

in the registry of the district court representing distributions of income from Stephen's one-eighth income interest in the Credit Shelter Trust are to be delivered to Patricia and credited to satisfaction of her alimony judgments against Stephen.

2.  Until Patricia's alimony judgments are satisfied, the Trustees shall pay directly to Patricia, her successors and assigns, all distributable net trust income allocable to Stephen's income interest in the Credit Shelter Trust, at least once per calendar year.

3.  After Stephen becomes entitled to receive income distributions from the Marital Deduction Trust, the Trustees shall pay directly to Patricia, her successors and assigns, all distributable net trust income allocable to Stephen's income interest in said Trust, at least once per calendar year, until her alimony judgments are paid in full.

4.  If, during the continuation of the Credit Shelter Trust, Patricia's alimony judgments should be satisfied, the Trustees shall pay to the government such distributable net trust income as would have been paid to Patricia, at least once per calendar year, until its tax lien is paid in full.

5.  During the continuation of the Marital Deduction Trust following the demise of Nathalie, all distributable net trust income allocable to Stephen and not payable to Patricia under the foregoing provisions shall be paid to the government

until its tax lien is paid in full.

6. If, at Stephen's death, Patricia's alimony judgments shall not have been paid in full, the Trustees shall pay directly to Patricia, her successors and assigns, any remaining interest of Stephen in the principal of the Credit Shelter Trust; provided, however, that if Patricia's alimony judgment shall have been satisfied, then the Trustees shall pay directly to the government Stephen's remaining interest in the principal of that subtrust, until the government's tax lien is paid in full.

7. After the death of the second to die of Nathalie and Stephen, any interest of Stephen in the Marital Deduction Trust shall be paid first to Patricia, her successors and assigns, until her alimony judgments are paid in full; and then to the government until its tax lien is satisfied.

8. Anything in the foregoing to the contrary notwithstanding, the Trustees are authorized to recover the attorney's fees they have incurred in connection with the instant litigation, including this appeal, first from Stephen's principal interest in the Credit Shelter Trust, then, if necessary, from remaining principal of the Credit Shelter Trust, and finally, if still necessary, from the Marital Deduction Trust; in such amounts and at such time or times as the Trustees in their sole discretion deem appropriate.

MODIFIED IN PART and, as modified, AFFIRMED.