# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

—————————

No. 98-30989
Summary Calendar

—————————

FRANK C. JORDAN,

Plaintiff-Appellee,

VERSUS

CITY OF BATON ROUGE,

Defendant-Appellant.

—————————

Appeal from the United States District Court
for the Middle District of Louisiana

—————————

August 3, 1999

Before JOLLY, SMITH, and WIENER,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The City of Baton Rouge appeals a final judgment entered against it on Frank Jordan's Americans with Disabilities Act ("ADA") claim. Finding no reversible error, we affirm.

## I.

Jordan served as a Baton Rouge police officer from February 1978 to May 1987. His tour of duty ended when he took disability retirement on account of stress-related asthma that began to develop in 1985. Despite efforts to keep it under control, he suffered from severe asthma problems. He was forced to be inactive, which resulted in a substantial weight gain. He could not even walk to the mailbox in front of his home.

Jordan used substantial amounts of medication in an attempt to control the asthma. Over time, he began to succeed. By 1992, he had lost weight, was able to walk and run, and took karate classes. Because he felt he had his asthma under control, he decided to seek reinstatement. He underwent five separate medical exams, with each examiner concluding that he was fit to return to work and that his asthma no longer was a disabling condition.

In August 1992, Jordan applied for reinstatement. He first unsuccessfully attempted to meet with Chief Phares, then applied to the Civil Service Board, submitting documentation from his medical examinations to support reinstatement. Soon thereafter, the Civil Service Board's secretary informed Jordan that he needed to obtain clearance from the Retirement Board before the Civil Service Board could consider his application. He did not.

In October 1992, Jordan voluntary

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

submitted to a sixth medical examination, administered by Dr. Marla Albanes, who provides services to the city, including fitness-for-duty examinations for police officers. Albanes also cleared him for work. When the Civil Service Board met later that month, it determined that Jordan had to seek review from the Retirement Board before it could hear his application; Jordan did not do so.

In November 1992, Jordan appealed the Civil Service Board's decision to a state court, which reversed the Board and ordered it to decide whether he should be allowed to return to work. In May 1993, the Civil Service Board directed Phares immediately to arrange for Jordan's evaluation by a physician and psychiatrist to determine whether he was able to return to work. Two days later, Jordan began working again.

The city has given Jordan full back pay, and he continues to serve as an officer. In this suit, he seeks general damages (emotional distress, mental pain and suffering) and attorney's fees. He testified that, while awaiting the city's decision, he had to perform menial jobs to support himself. This was an emotionally difficult time and led to his divorce. He spent $2,000 to renew his commercial truck-driving license and spent time hauling heavy equipment. He also worked for a hardware store and a forklift business, where he earned little more than the minimum wage.

When reinstated, Jordan believed he could do as much as any other officer. He had no problem performing his job. He testified that no other officers who applied for reinstatement had to go through the Retirement Board as he was instructed to do.

Lieutenant Vernet Johnson of the Police Department was the chairman of the Civil Service Board when Jordan applied. Johnson said the board had no involvement in hiring and firing; it merely heard appeals of personnel decisions. Most of the board's members were against reinstating Jordan. He opposed reinstatement because he "didn't have proof that the medical problems he had [were] resolved."

Johnson acknowledged requesting that the chief have Jordan medically evaluated. Only when pressed on cross-examination did he add that the board's position was that Jordan first had to go to the Retirement Board. Johnson recalled one other officer who had taken a medical retirement and sought to return; Johnson believed that he too was reinstated by a court after the board would not authorize his return. The parties stipulated that Phares believed Jordan had to apply to the Retirement Board.

The City moved for judgment as a matter of law, contending that Jordan had not proven he had, or that the city regarded him as having, a disability. It also argued that Jordan had sued the wrong entity; any complaints were attributable to the Board, and any actions and perceptions were its responsibility. It characterized the situation as a dispute over procedure, which did not constitute an adverse employment action. It also argued that any perception of disability Jordan had proved demonstrated only a limited perception and that he was not perceived as being substantially limited in the major life activity of working. Finally, the city contends Jordan had a duty to mitigate his damages by appearing before the Retirement Board.

Jordan responded that the city did perceive him as disabled and that the requirement that he go before the Retirement Board discriminated against him on account of that perception. He also averred that the city waived any argument that it is not responsible for the Civil Service Board by failing to raise it in its answer, or even in subsequent pleadings. Finally, because the city is his employer, it was responsible for the board's actions.

The court, through a magistrate judge, agreed and entered judgment for Jordan. The City appeals, raising essentially the same arguments: (1) It is not responsible for the board; (2) no evidence was adduced that the "employer" perceived him as disabled; and (3) Jordan did not suffer an adverse

employment action at the city's hands.

## II.

In reviewing judgments on the merits from civil bench trials, we review conclusions of law *de novo* and conclusions of fact for clear error. *See Read v. United States Dep't of Treasury*, 169 F.3d 243, 247 (5th Cir. 1999); *North Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 914-15 (5th Cir. 1996). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse even if we are convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently." *Id*. at 915. Where, as here, the facts are essentially uncontested, however, "our review of the judgment is plenary." *Read*, 169 F.3d at 247.

## III.
### A.

The city argues that under state law, the board is an independent entity for which it cannot be held responsible; Jordan should have sued the board instead of the city. We do not consider this argument. As the court noted, and the city does not dispute, failure to sue the proper party must be raised as an affirmative defense; if not, it is waived unless the court grants leave to amend the pleadings. *See Bokunewicz v. Purolator Prods., Inc.*, 907 F.2d 1396, 1402 (3d Cir. 1990). The city never sought to amend, but only raised the defense at trial.

Even if it had amended its pleadings, we would not be convinced. Louisiana law provides, "A municipal fire and police civil service board is created in the municipal government." LA. REV. STAT. § 33:2476.[1] The board acts as an agent of the city, and the city may be held responsible for its discriminatory actsSSeven if the Board maintains a certain amount of independence from the rest of city government in its decision making. As the district court aptly observed, accepting the city's argument would place a victim of the board's discrimination in the untenable position of being unable to recover from either the city (not the proper defendant) or the board (not the employer).

---

[1] Article XIV, § 15.1(6) of Louisiana's former constitution, retained as a statute when the state adopted a new constitution, also provides for the creation of a board in the municipal government.

B.

The city contends that the court erred in finding Jordan disabled. A plaintiff can prove disability by establishing that he (1) has a physical or mental "impairment" that "substantially limits" one or more of the "major life activities;" (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Jordan claims to be healthy now, making the first alternative inapposite. The court found both alternatives two and three applicable. We agree.

First, Jordan has a "record" of impairment if he has a history of having a physical impairment that substantially limits one or more of his life activities. *See* 29 C.F.R. § 1630.2(k). He does; he suffered from severe asthma; this constitutes an impairment, *i.e.*, a condition or disorder that affects his respiratory system. [2] The uncontroverted evidence establishes that he had been classified as suffering from severe asthma. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1120-21 (5th Cir. 1998) (explaining record of impairment established by history of classification of impairment).

Further, Jordan's history of asthma substantially affected a major life activity. He had severe trouble breathing, which itself is a major life activity. *See Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997) (citing 29 C.F.R. § 1630.2(i)). For a time, he also could not perform the most basic of daily manual, ambulatory tasks, such as walking to his mailbox.[3] The court did not clearly err in finding a history of severe asthma that restricted Jordan's activity, and it correctly

applied the law in finding that this constitutes a record of impairment.[4]

In addition, the City regarded Jordan as disabled. A person is perceived as disabled if (1) the employer treated him as though he had an impairment that limited major life activities, even if the impairment he has did not; (2) he has an impairment that limits major life activities only because of the attitudes of others toward the impairment; or (3) he has no impairment, but the employer treated him as though he has a substantially limiting impairment.[5]

When he reapplied to the force, Jordan had his asthma under control. He no longer suffered from an impairment that substantially limited his major life activities; nonetheless, he was treated as if he did. Johnson testified that most of the Civil Service Board opposed reinstatement and that, although he could not speak for the other members, he opposed it because he did not have proof that the medical problems were resolved.

Johnson thus acted under the presumption that Jordan still suffered from the same impairment substantially affecting major life activities as before. The court did not clearly err in refusing to credit Johnson's testimony that the board did not reinstate Jordan because they thought he first needed to go to the Retirement Board; Johnson did not testify to that effect until pressed on cross-examination.

---

[2] *See* 29 C.F.R. § 1630.2(h); *see also Deas v. River West, L.P.*, 152 F.3d 471, 476 n.8 (5th Cir. 1998) (citing 29 C.F.R. § 1630.2(h)).

[3] *See Sherrod*, 132 F.3d at 1120 ("To determine whether an individual is substantially limited in a major life activity other than working, the court looks to whether that person can perform the normal activities of daily living.").

---

[4] The City argues that Jordan was healthy when he returned to work and thus did not suffer from an impairment. But the definition here relies on a record of such an impairment, and Jordan has a record of severe asthma. Nor is it significant that little evidence suggests he was disabled in the major life activity of working. That is but one area that a disability can affect; here, his severe asthma affected his breathing and such simple daily tasks as retrieving his mail.

[5] *See Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 859 (5th Cir. 1999); *Bridges*, 92 F.3d at 331; *see also* 29 C.F.R. § 1630.2(l).

### C.

The City argues that Jordan suffered no adverse employment action at the city's hands. For the most part, this argument simply reiterates the city's first contention, which we already have rejected, that the city cannot be held liable for the board's wrongful actions. The city also appears to aver that it took no adverse action other than asserting a legal position that did not prevail; this, it contends, cannot constitute adverse employment action.

Jordan complains, however, that the city attempted to require him, as a disabled person, to apply to the Retirement Board for reinstatementSSsomething non-disabled persons were not required to do. As the district court concluded, absent a business necessity, "the ADA does not allow the City to create one set of rules for applicants with a disability history and a separate set of rules for those who have no such history."

The city has not offered a business reason for doing this. Instead, it appears that the city simply placed additional hurdles in Jordan's way, making it more difficult for him to be reinstated simply because he has a history of disability. By delaying reinstatement through these dilatory tactics, the city took adverse employment action against Jordan.

AFFIRMED.