Kenneth HAMMES, Trustee in Bankruptcy, in the Matter of Arizona Stores, Inc., Bankrupt, Appellant,

v.

TUCSON NEWSPAPERS, INC., an Arizona corporation, Appellee.

No. 18384.

United States Court of Appeals Ninth Circuit.

Nov. 4, 1963.

Boyle, Bilby, Thompson & Shoenhair and William A. Scanland, Tucson, Ariz., for appellant.

Zipf, Larkin & Lyle, Tucson, Ariz., for appellee.

Before HAMLEY, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

The trustee in bankruptcy of Arizona Stores, Inc. appeals from a decision of

the district court following review by it of a decision of the referee in bankruptcy. The question presented is whether a federal tax lien takes precedence over an assignment by the bankrupt to appellee Tucson Newspapers, Inc. of the right to receive certain moneys.

The facts are not disputed. Arizona Stores, Inc. was adjudicated a bankrupt on May 4, 1961. On August 9, 1960 it had executed and delivered to Tucson Newspapers a written assignment of "the principal payments, each in the sum of $6,775.19 which become due and payable on October 1, 1960 and October 1, 1961 respectively under" an agreement of sale of real property, dated August 20, 1959, and recorded October 13, 1959, in which Arizona Stores was vendor. The assignment recites that it is "made as security for any indebtedness of Arizona Stores Corporation * * * to Tucson Newspapers, Inc. for advertising, and if the said Arizona Stores Corporation * * * does not owe Tucson Newspapers, Inc. any money for advertising on October 1, 1960 and/or on October 1, 1961 then this assignment shall be of no force or effect." The assignment was recorded on October 7, 1960. Federal tax liens were recorded on the following dates and in the following amounts:

| | | |
|---|---|---|
| April 7, 1961 | $10,103.61 | (assessed Feb. 24, 1961) |
| April 10, 1961 | 395.53 | |
| July 13, 1961 | 5,517.59 | |

The amount of indebtedness of Arizona Stores to Tucson Newspapers for advertising varied as follows:

| | |
|---|---|
| October 1, 1960 | None |
| February 22, 1961 | $ 9,016.75 |
| April 7, 1961 | 15,631.72 |
| April 10, 1961 | 15,731.72 |
| May 4, 1961 | 18,321.93 |
| July 13, 1961 | 18,321.93 |
| October 1, 1961 | 18,321.93 |

At no time after February 22, 1961 was the indebtedness less than the sum owed on that date. Tucson Newspapers did not receive the October, 1960 payment that had been assigned to it because on that date Arizona Stores did not owe it any money. The record does not show whether, and if so when, the bankrupt collected that payment. We presume that it was collected when due, and was thus no longer owing when the bankruptcy occurred in May of the next year. So far as appears, the duty of the land purchaser to make the October 1, 1960 and 1961 payments was not subject to any conditions.

The question is whether, at the time that the first federal tax lien was recorded, the right of Tucson Newspapers to receive the moneys to become due and payable on October 1, 1961 was "choate" [1] so as to take precedence over the federal tax lien. The district court held that it was, and we agree. It will be observed that when the federal lien was recorded the debt which the assignment was given to secure was substantially greater than the tax claim, and substantially greater than the amount then covered by the assignment, the October 1, 1961 payment.

We reject the contention that the August 9, 1960 assignment expired by its own terms on October 1, 1960, because no money was owed by the bankrupt to Tucson Newspapers on that date. While the language of the instrument could be so construed, we think that a more reasonable construction, and the one apparently given to it by the parties to it, is that it "shall be of no force or effect" as to the payment due on that date, but shall still continue to be effective, as to the next payment, as security for indebtedness incurred during the year following October 1, 1960, unless all of that indebtedness is paid by October 1, 1961. So interpreted, it is like the usual condition

1. This word is described in Webster's New International Dictionary, 2d ed., as "rare," and does not appear at all in Funk & Wagnall's New Standard Dictionary (1923 ed.). We do not find it particularly couth, and use it only because the Supreme Court has revived it in federal tax lien cases. What is wrong with "complete" (Webster, 2d ed.)?

in a mortgage, that when the debt secured is paid, the conveyance effected by the mortgage shall be void, except that here there are two items of property constituting the security, and each is treated separately. As is usual, the solecism "and/or" is worse than useless, contributing nothing but doubt to the instrument in which it appears.

■■ The district court held that the assignment of August 9, 1960 is a mortgage, under Ariz.Rev.Stat., 1956, § 33-412 and the decision in Gamble v. Consolidated Nat. Bank, 1928, 33 Ariz. 117, 262 P. 612. We agree. It also held that Tucson Newspapers is a mortgagee within the meaning of 26 U.S.C. § 6323(a), which is a federal law question. Again, we agree. (See Hoare v. United States, 9 Cir., 1961, 294 F.2d 823, 825). But this is not the end of the matter.

■ As is stated in United States v. Pioneer American Ins. Co., 1963, 374 U.S. 84, 89, 83 S.Ct. 1651, 10 L.Ed.2d 770, it is still required that the lien created by the mortgage be choate, and this question must be answered by federal law. In the Pioneer American case, it is stated that the question is what is "the time it [the lien] attached to the property in question and became choate." (374 U.S. p. 88, 83 S.Ct. p. 1655, 10 L.Ed.2d 770). It is further stated that a lien becomes choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." (374 U.S. p. 89, 83 S.Ct. p. 1655, 10 L. Ed.2d 770). We now apply these tests to the case at bar.

■ There is no question that the identity of the lienor, Tucson Newspapers, Inc., became established long before the federal tax lien was recorded. The property subject to the lien is the right of the bankrupt to receive, on October 1, 1961, the principal payment to become due on that date under the agreement of sale. That right existed on the date when the assignment was executed (August 9, 1960), on the date when the assignment was recorded (October 7, 1960), on the date when the federal tax was assessed (February 24, 1961), and on the date when the tax lien was recorded (April 7, 1961). The fact that the property subject to the lien is a present right to receive money in futuro does not make the lien inchoate, at least where the right is unconditional.

The amount of the lien, i. e., the amount owed to Tucson Newspapers and secured by the assignment, was established by dealings between the bankrupt and the lienor, and the record shows without contradiction, that from February 22, 1961 the balance due was never less than $9,016.75. On the crucial day, April 7, 1961, it was $15,631.72, and it never dropped below that figure thereafter. We think it safe to say that February 22, 1961 is prior to April 7, 1961 within the "first in time is the first in right" test reiterated in Pioneer American, 374 U.S. p. 87, 83 S.Ct. p. 1654, 10 L.Ed.2d 770.

This is quite different from the situation in Pioneer American, which involved attorney fees to be fixed by the court in the event of foreclosure. Default had occurred before any of the federal tax liens were recorded, but action to foreclose was not filed until after some federal liens were recorded, and did not go to judgment until after the last federal lien was recorded. It was conceded that a right to the attorney fees accrued at the time of default, but this right was held not to amount to a choate lien because the fees had not been incurred or paid (by the lien holder), or fixed in amount by the court in the foreclosure action, when the federal liens attached. The Court followed United States v. R. F. Ball Constr. Co., 1958, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, which held that, in the case of a security for future advances, the lien is not choate as to advances made *after* the federal lien has been recorded. This is not the rule, however, as to such an interest, when the advances have been made *before* the federal lien has attached. (Hoare v. United States, supra, 294 F.2d at 826; see also Crest Finance Co., Inc. v. United States, 1961, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.

2d 342, reversing United States v. Crest Finance Co., 7 Cir., 1961, 291 F.2d 1, where the facts are stated. Pioneer American cites Crest Finance with apparent approval.) The present case is in the latter category.

Affirmed.