UNITED STATES of America, Plaintiff-Appellee,

v.

Ingemar JOHANSSON, Defendant,

Roy Cohn and Thomas Bolan et al., Defendants-Appellants.

No. 28622.

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1971.

Philip Bloom, Miami, Fla., Thomas A. Bolan, New York City, for defendants-appellants.

Lavinia Reed, Asst. U. S. Atty., Edward Rubinoff, Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, John J. McCarthy, Attys., Tax Div., U. S. Department of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

This appeal presents another chapter in the efforts of the United States to recover taxes due from three world championship boxing matches that took place over a decade ago between Ingemar Johansson and Floyd Patterson. The instant appeal concerns $135,769.94 of the proceeds from the third of these fights, staged on March 31, 1961, in Miami, Florida. The district court determined that appellants Roy Cohn and Thomas Bolan should be held personally responsible for Johansson's unpaid taxes in that amount. We affirm.

The factual and procedural history of this case are quite involved. We need not, however, describe the entire course of events in order to present the narrow questions to be decided at this time. In February of 1961, Floyd Patterson and Ingemar Johansson had previously engaged in two world championship boxing matches and had agreed to engage in a third fight on March 13, 1961. In connection with Johansson's tax liability from these fights, the government participated in extensive negotiations with Johansson[1] and Feature Sports, Inc. (Feature Sports) the promoters of the second and third fights.

The appellant Roy Cohn was owner of one-third of Feature Sports' stock, an officer, and a director of the corporation. The appellant Thomas A. Bolan owned no stock, but was active as the corporation's treasurer until June, 1961, when he resigned. Both actively represented Feature Sports in the above capacities and as members of the law firm that provided most of the corporation's legal advice. The president of the corporation, W. D. Fugazy, is not a party to this appeal.

1. Scanat, S.A., a Swiss corporation that was set up by Johansson for tax purposes and was later determined to be Johansson's alter ego, also participated.

Shortly before the date of the third fight, tax negotiations reached an impasse.[2] On February 17, 1961 the Commissioner assessed a substantial amount of taxes for the year 1960 and declared them immediately due and payable. Suit was filed to collect the unpaid taxes and to restrain Feature Sports and others from relinquishing control of funds held by them that were payable to Johansson or his agents in connection with the third fight. On February 28, 1961, the district court issued a temporary restraining order which:

> Ordered that defendants Ingemar Johansson, Feature Sports, Inc., Scanart, S.A., Thomas Bolan, Roy Cohn, Irving B. Kahn, Humbert Fugazy and TelePrompter Corp., their agents, servants, employees, corporate officers, and all persons in active concert or participation be, and they are hereby, restrained from transferring any funds payable to Feature Sports, Inc., or TelePrompter Corp., to the account of, or to, either Ingemar Johansson, Scanart, S.A., or their nominee, for the appearance of Ingemar Johansson in a boxing match on March 13, 1961, outside of the country or from otherwise relinquishing their present control or possession of any such monies, * * *[3]

That order remained in effect throughout the litigation and became merged with the trial court's final judgment.

Immediately after the third fight, the Commissioner assessed Johansson's taxes for the period from January 1, 1961, to March 13, 1961 and declared them immediately due and payable. The complaint in the district court was subsequently amended to assert this liability.

On December 13, 1961, the district court entered its final decree,[4] together with detailed findings of facts and conclusions of law. Johansson's total tax liability was fixed at $1,009,706. Feature Sports, Bolan, Cohn, and others were ordered to render an accounting and to turn over to the government all funds held pursuant to the order of February 28, 1961. Claims of $287,750.60 for "advances and payment of unsecured claims" by Feature Sports to creditors of Johansson were not allowed as deductions from these funds.[5] On appeal this judgment was affirmed.[6]

On February 21, 1968, the action from which this appeal is taken was instigated. The government filed a motion, pursuant to Fed.R.Civ.P. 70, to compel Bolan, Cohn, and W. D. Fugazy to com-

---

2. Johansson contended that he was a citizen of Switzerland, employed by a Swiss corporation, and therefore was not, under the terms of a United States treaty with Switzerland, subject to taxation in this country.

3. Of the parties named in the temporary restraining order, only Bolan and Cohn are involved on this appeal.

4. In pertinent part, the decree provided as follows:
   Ordered, adjudged, and Decreed that the defendant Feature Sports, Inc., and its officers Roy Cohn, Thomas Bolan, and Humbert Fugazy render an accounting to and turn over to the plaintiff United States of America the funds it holds which represent compensation to Ingemar Johansson for his appearances in the June 26, 1959, June 20, 1960, and March 13, 1961 fights, undiminished by its offsetting claims which amount to $287,750.00 for ad-

vances and payments of unsecured claims, but which funds can be diminished by Feature Sports, Inc., by $27,000 which represent payments authorized by this Court.

5. This figure consisted of $250,000.00 deposited in a Swiss bank by Feature Sports, Inc. as advance compensation to Johansson for the third fight, and $37,750.60 in advance payments made prior to the action by Feature Sports to creditors of Johansson.

6. Johansson v. United States, 336 F.2d 809 (5th Cir. 1964). The case was remanded in part to determine whether there existed a valid escrow arrangement between Feature Sports and Johansson for the advance payment of $250,000.00. Upon a determination by the district court that there was no such contract, the judgment was affirmed in its entirety. Feature Sports, Inc. v. United States, 374 F.2d 890 (5th Cir. 1967).

ply with the prior judgment and to account for funds allegedly due the government by virtue of the 1961 court orders. After an extensive hearing, the district court determined that Bolan and Cohn in their personal capacities had not satisfactorily accounted for $135,769.94, and they were found jointly and severally liable in that amount.[7] W. D. Fugazy was not included because he was not named in the court's order of December 14, 1961.

On this appeal, appellants complain of the district court's failure to allow certain deductions, advances, and other offsets which, if permitted, would appreciably diminish their liability.[8] They contend that these sums, aggregating in excess of $100,000.00, were paid to creditors of Johansson as required by the terms of an oral contract between Feature Sports and Johansson.[9] From this alleged contract, they argue, an equitable lien arose and attached prior to the federal tax lien and the court's order of February 28, 1961. Thus, they contend, Johansson's right under the written contract to the sums advanced was extinguished before Feature Sports collected the funds it applied to offset them.

■ The trial judge heard these arguments and took evidence on the factual issue regarding the nature and existence of the oral contract. It was his conclusion that no such contract had been formed. On the contrary, he found the advances were merely "voluntary loans" made to Johansson to retain his goodwill. We have carefully examined the record and cannot conclude that these findings are clearly erroneous.

■■ Moreover, even if a legally enforceable contract had been formed, it would not have been sufficient to override the federal tax lien that attached as of March 14, 1961.[10] By paying funds

7. The court found that Johansson was due $484,247.12 from Feature Sports for the third fight. From this the government collected $71,477.18 in taxes. Feature Sports was not held accountable for sums to be offset by deductions of $250,000 (advance payment to Johansson as per note 5 supra) and $27,000 in court authorized expenses. Thus there remained a sum of $135,769.94 for which, the court found, appellants could not properly account. The court stated in its findings of fact:

With respect to the balance of $135,769.94 various claims and setoffs have been asserted against Johansson's share after Johansson earned the said monies in the fight on March 13, 1961. With respect to these claims and setoffs, it would appear that Feature Sports voluntarily paid a number of unsecured creditors of Johansson prior to the March 13, 1961 fight to gain Johansson's good will; it appears that some of the claims and setoffs were not setoffs properly asserted against Johansson; it appears that Feature Sports paid some of Johansson's creditors after the March 13, 1961 fight; further, it appears that there was no contract between Feature Sports and Johansson which required or provided that Feature Sports make these payments. Many of the setoffs claimed now by Messrs. Cohn, Bolan and Fugazy were specifically claimed on Feature Sports' behalf

at the main trial held in this action * * * on September 18, 1961, and this court did disallow those claimed setoffs by its Findings of Fact, Conclusions of Law and Order of December 14, 1961. Further, it appears that the Court of Appeals for the Fifth Circuit did specifically uphold on an appeal by Feature Sports this Court's disallowance of these claimed setoffs. None of these claimed setoffs are properly chargable by Feature Sports against amounts Johansson earned by engaging in the March 13, 1961 fight with Floyd Patterson.

8. Appellants admit that they cannot account for $19,035.37 and that at least $2,660 of the advances were made after the order of February 28, 1961.

9. This oral contract was allegedly formed in Sweden in December of 1960 between Fugazy and Johansson. Appellants contend that they agreed to advance Johansson's "expenses" in order to retain his goodwill and to induce him to fulfill his obligation to come to this country to fight Patterson. Most of the "expenses" paid related in no way to the March 13, 1961 fight; they included such unnecessary items as a private airplane, flying lessons and an automobile.

10. 26 U.S.C. § 6321; 68A Stat. 779 (1954) (formerly 26 U.S.C. § 6323). See United States v. R. F. Ball Construc-

out of the corporate pocket of Feature Sports at Johansson's direction without a formal security arrangement, appellants caused any claim of Feature Sports to the proceeds of the third fight to become subordinate to that of the government. Indeed this court's prior decision that the government's tax lien prevails over the offsets claimed by Feature Sports as deductions in the 1961 proceedings is the law of the case:[11]

> Insofar as the expenditures in question may be deductible from Johansson's compensation for the third fight, moreover, they could only be deducted after such compensation was earned. As the income was not earned until after the tax liens attached, and as the expenditures sought to be deducted were made to unsecured creditors, a setoff of these expenditures would undermine the recognized priority of the liens.[12]

■ Appellants also argue in this regard that advances made by them before the restraining order was issued could not violate the order since it was intended to apply prospectively only. This argument misses the mark. Of course the order does not, and could not, prohibit the occurrence of previously accomplished facts; after its issuance, however, the order can, and does, prevent the application of funds which are subsequently held or received for Johansson as offsets against his unsecured debts no matter when the debts arose.[13]

■ Appellants also disagree with the district court's decision to hold them personally liable for the debts of the now defunct Feature Sports, Inc.[14] Bolan individually contends that he is indeed a special case since he owned no interest in the corporation and resigned his post as its treasurer in June of 1961. Despite these arguments, we do not hesitate to affirm the district court's determination that appellants have violated the court's orders. Both Bolan and Cohn were expressly named in the orders. Moreover, the record is clear that they were controlling and managing the

---

tion Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958); United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed.2d 271 (1955); United States v. Morrison, 247 F.2d 285, 288 (5th Cir. 1957); cf. Crest Finance Co. v. United States, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed. 271 (1955); United States v. —Priority of Federal Tax Liens, 2 L.Ed. 2d 1823, §§ 4, 6 (1958).

In the initial litigation involved in this proceeding, the district court made specific "Findings of Fact and Conclusions of Law" and concluded:

10. The involved tax assessments are secured by liens which encumber all property and rights to property of defendant Ingemar Johansson including the compensation for his appearance in the March 13, 1961, fight and the compensation for his appearance in the June 20, 1960, fight and the compensation for his appearance in the June 26, 1959, fight, and the lien securing the assessment for the calendar year 1960 arose on the date of assessment which was February 17, 1961, and the lien securing the assessment for the period January 1, 1961, through March 13, 1961, inclusive, arose on the date of assessment which was March 14, 1961.

11. Feature Sports, Inc. v. United States, 374 F.2d 890 (5th Cir. 1967); Lincoln Nat'l Life Ins. Co. v. Roosth, 306 F.2d 110 (5th Cir. 1962), cert. denied 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720.

12. Johansson v. United States, 336 F.2d 809, 815 (5th Cir. 1964).

13. In this case, it cannot be cogently argued that the advances were made from funds that were actually held for Johansson by Feature Sports prior to the court order. Although Feature Sports received less than $100,000.00 for Johansson as advance income for the third fight prior to the issuance of the February 28 order, it had already (on or before February 7, 1961) placed $250,000.00 in a Swiss bank in escrow for Johansson as advance compensation for that fight. Thus, no other advance payments made by Feature Sports for Johansson could have come from advance receipts.

14. The record indicates that Feature Sports, Inc. was insolvent by late 1961. As early as March 22, 1961, the principals began to plan its dissolution in order to escape legal entanglements.

corporation at all relevant times.[15] Cohn was an officer and a director of Feature Sports and owned one-third of its stock. W. D. Fugazy, the president of Feature Sports, testified that he was its "prime mover." Although Bolan owned no stock in the corporation, he was most active as treasurer; and was referred to by Fugazy as "general manager." Both men were signatories to Feature Sports bank accounts. In addition they were partners in the law firm that represented Feature Sports and in this capacity they actively managed its affairs until February of 1962. Indeed, Bolan continued to act as the lawyer for Feature Sports in winding up its affairs and supervising the collection of funds from TelePrompter even after his resignation as treasurer.[16] For example, he continued to deal with the corporation's accountants and set up a special bank account for tax collection.

Giving proper consideration to the above mentioned circumstances we cannot escape a conclusion that both Bolan and Cohn were directly and personally responsible for causing Feature Sports, Inc., to violate the court's orders. Indeed, this court, by refusing appellants' request in the 1964 appeal to alter the terms of the order to preclude the attachment of individual liability, has already recognized that such liability could arise.[17]

In summary, it is our firm conclusion that the prior decisions of this court, which establish the law of the case, the extensive findings of the trial court, the proceedings initiated by the government to protect its tax claim, and the totality of all the circumstances disclosed by the record, unquestionably require us to affirm the judgment of the district court.

The judgment is affirmed.

---

15. The district court found:
Roy Cohn, Thomas Bolan and William Fugazy were persons who controlled and managed, from the middle of 1960 through February 15, 1962, all affairs of Feature Sports, Inc. Although Thomas Bolan purported to resign as Treasurer of Feature Sports, Inc., on June 10, 1961, he continued thereafter to manage Feature Sports, Inc.'s financial affairs as an attorney and agent, and specifically he thereafter managed, supervised and controlled the collection of the funds due from Teleprompter Corporation on account of the television, film and radio rights to the March 13, 1961 fight. Further, with respect to the payments which the defendants claim credit for making on Johansson's

behalf or account, and which the United States is disputing in this proceeding, over $105,000 were made prior to Mr. Bolan's purported resignation and only $1,200 were made after his resignation.

16. It appears from the corporate minutes of a March 22, 1961 meeting of the principals of Feature Sports, Inc. that Bolan's resignation was not intended to terminate his association with either the fight promotion business or with Cohn and Fugazy. In fact, he resigned as part of a plan to establish a separate corporation, to be owned by Cohn, Fugazy and himself, that would continue to promote the fights of Floyd Patterson.

17. Johansson v. United States, 336 F.2d 809 (5th Cir. 1964).