Revised July 26, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 98-40170**

_____

**In The Matter Of: JOHN DAVIS ORR,**

**Debtor.**

-----------------------

**INTERNAL REVENUE SERVICE,**

**Appellee,**

**VERSUS**

**JOHN DAVIS ORR,**

**Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

July 12, 1999

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

A spendthrift trust beneficiary who extinguished personal federal tax liabilities through bankruptcy now appeals the determination by the district court that distributions from the trust are subject to a prebankruptcy federal tax lien until the tax

liability is satisfied. The district court's order conclusively settles a discrete issue within the bankruptcy case, and is appealable pursuant to 28 U.S.C. § 158(d). We conclude that the federal tax lien on income distributions from this Texas spendthrift trust attached to future distributions at the time of the creation of the lien, and not as of the time each distribution was made. The lien thus predates and survives the bankruptcy. The judgment below is, therefore, affirmed.

## I.

On April 24, 1965, Unis Chapman Eichelberger executed a document entitled "Unis Chapman Eichelberger Chapman Ranch Trusts" ("Trust Document"). Eichelberger's grandson, John Davis Orr, is the named principal beneficiary of the Unis Chapman Eichelberger Chapman Ranch Trust I ("Trust"), described in the Trust Document. The Trust provides that Orr, after reaching the age of thirty, shall receive "all of the net income of the trust . . . distributed . . . annually or at more frequent intervals." The Trust lasts for Orr's life and then terminates. Orr has limited testamentary power over the distribution of the Trust's property after his death, but if Orr does not exercise this power the property is distributed to Orr's then-living descendants, and if no such persons exist, to charity. The spendthrift provision reads as follows:

> No trust assets or income shall be liable for the debts of any beneficiary, nor subject to seizure under any judicial writ or proceeding. No beneficiary shall have the power to give, grant, sell, assign, transfer, mortgage, pledge, encumber, or in any manner to anticipate or dispose of the interest in the trust estate or its income or to dispose of the interest in the trust estate or its income or to dispose of any trust property until it has been actually delivered to him in accordance with the terms hereof, except that the foregoing shall in no manner restrict the authority otherwise granted to any trustee who is a beneficiary to distribute the trust property as provided herein.

Despite the generous provisions made for him by his grandmother, Orr has encountered financial difficulties. He filed for bankruptcy relief under Chapter 7 on November 1, 1995, and received his discharge on May 21, 1996. He has received no distributions from the Trust since filing for bankruptcy relief. And, most pertinent to the present controversy, he had previously run afoul of the Internal Revenue Service by failing to pay income taxes.

Orr failed to file his federal income tax returns for 1984 through 1991. After examination, the IRS and Orr agreed to the amount of tax and signed a Form 4549-CG, Income Tax Examination Changes, consenting to assessment and collection on October 1, 1992. On October 26, 1992, the IRS assessed the taxes, penalties, and interest reflecting the consent. Despite notice and demand, Orr's federal income tax liabilities for the taxes assessed on October 26, 1992 (to the date of the bankruptcy petition) were as follows:

| Year | Amount |
|------|--------|
| 1984 | $160,062.08 |
| 1985 | 63,126.91 |
| 1986 | 88,018.08 |
| 1987 | 79,723.98 |
| 1988 | 141,729.83 |
| 1989 | 29,435.00 |
| 1990 | 45,436.27 |
| 1991 | 23,842.35 |

Notices of federal tax liens were filed in the personal and real property records of Nueces County, Texas for the 1984 through 1991 income tax liabilities on January 11, 1993. Orr also owed federal income taxes on the date of petition for 1992 in the amount of $2.69. Notices of federal tax liens were filed in the personal and real property records of Nueces County for the 1992 income tax liability on December 28, 1993. At the times the notices of federal tax liens were filed, Orr was a resident of Nueces County.

Orr filed this adversary action to determine the answer to one stipulated issue: "Whether the Internal Revenue Service's Notices of Federal Tax Lien attached to any interest of Debtor in the Unis Chapman Eichelberger Chapman Ranch Trust I to secure the payment of Debtor's federal income tax liabilities for 1984 through 1992?" The parties agree that Orr can be granted a personal discharge from his federal tax liability for 1984 through 1991 pursuant to 11 U.S.C. § 727, but not for his liability for 1992. Furthermore, the parties stipulated that the federal tax liens attached to Orr's property or interests in property in existence at the time of his

bankruptcy filing are not dischargeable as to the property to which they attached. There is no stipulation as to whether the federal tax liens attached or attaches to any of Orr's interest in the Trust or its assets, or that Orr has or had an interest in the Trust or its assets.

Orr prevailed in the bankruptcy court. The IRS appealed to the district court, which reversed the bankruptcy court. Orr now appeals the judgment of the district court.

## II.

Counsel were instructed to brief the question of "[w]hether the order from which appeal is taken in the bankruptcy case is a final order for purposes of appeal." The parties agree that this Court may properly exercise its appellate jurisdiction, invoking the grant of jurisdiction in 28 U.S.C. § 158(d). That statute provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." 28 U.S.C. § 158(d). Subsection (a) provides for the appellate jurisdiction of district courts over inter alia, "final judgments, orders, and decrees . . . of bankruptcy judges." (Subsection (b), which is inapplicable in this case, pertains to the jurisdiction of bankruptcy appellate panels.)

Orr prevailed on his motion for summary judgment in the bankruptcy court, based on his contention that the tax liens do not attach to his post-discharge income distributions from the Trust. In the context of a bankruptcy proceeding, this grant of summary judgment qualified as a "final order" reviewable by the district court. This Court has explained:

> A [bankruptcy] case need not be appealed as a "single judicial unit" at the end of the entire bankruptcy proceeding, but the order must constitute a "'final determination of the rights of the parties to secure the relief they seek in this suit,'" or the order must dispose of a discrete dispute within the larger bankruptcy case for the order to be considered final.

*Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1155 (5th Cir. 1988) (internal citations omitted). There is, therefore, a lower threshold for meeting the "final judgments, orders, and decrees" appealability standard under 28 U.S.C. § 158(a) than there is for the textually similar "final decisions" appealability standard under 28 U.S.C. § 1291. In this case, the decision of the bankruptcy court resolved all dispositive issues pertaining to the discrete dispute concerning the post-discharge viability of pre-discharge federal tax liens on Orr's interest in the Trust, and therefore was ripe for appeal to the district court.

Likewise, the district court's reversal of the bankruptcy court is reviewable by the court of appeals pursuant to 28 U.S.C. § 158(d). Review of "final decisions, judgments, orders, and

decrees" under § 158(d) is more akin to review of "final decisions" under § 1291 in nonbankruptcy appeals, whereby "[a] decision is final when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*, 170 F.3d 536, 539 (5th Cir. 1999) (quoting *Askanase v. Livingwell, Inc.*, 981 F.2d 807, 810 (5th Cir. 1993) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S. Ct. 2454 (1978))). But even under § 158(d), "this court's determination of whether an order is final (and therefore appealable) is more liberal in the bankruptcy context" than under § 1291. *See* *Lentino v. Cage (In re Lentino)*, No. 98-20626, 1999 WL 77140, at *2 (5th Cir. Mar. 5, 1999) (summary calendar).

If this adversary proceeding stood alone as an independent case, it would be appealable even under the higher standard of § 1291. Now that the district court has overruled the bankruptcy court and ordered "that IRS' lien shall attach to all income distributions made to Orr from the spendthrift trust at issue," there is nothing left for the bankruptcy court to do. Hence, the matter is sufficiently "final" for appellate review.

## III.

Orr is the beneficiary of a spendthrift trust. Texas law has historically respected the validity of spendthrift trusts. *See,*

-7-

*e.g.*, **Caples v. Buell**, 243 S.W. 1066 (Tex. Comm'n App. 1922); *see generally* 72 Tex. Jur. 3d *Trusts* §§ 37-42 (1990).  The state specifically acknowledges the validity of spendthrift trusts by statute.  *See* Tex. Prop. Code Ann. § 112.035 (Vernon 1995).

The creation of a trust involves the separation of legal and equitable ownership of property.  The trustee is the legal owner of the corpus of a spendthrift trust; the beneficiary is the equitable owner.  *See, e.g.*, **Burns v. Miller, Hiersche, Martens & Hayward, P.C.**, 948 S.W.2d 317, 322 (Tex. App.--Dallas 1997, writ denied).

The tax liens at issue in this case were created pursuant to 26 U.S.C. § 6321, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.  "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." **Glass City Bank v. United States**, 326 U.S. 265, 267, 66 S. Ct. 108, 110 (1945).  "Congress meant to reach every interest in property that a taxpayer might have." **United States v. National Bank of Commerce**, 472 U.S. 713, 719, 105 S. Ct. 2919, 2924 (1985).  The Supreme Court has construed the language of § 6321 to mean that a tax lien attaches not only to property owned by the debtor at the

time the lien attaches, but also to after-acquired property until the tax liability is satisfied.  *See* **Glass City Bank**, 326 U.S. at 267-69, 66 S. Ct. at 110-11.

The interaction between federal and state law in this area is an important facet of our analysis.  It is well-settled that in federal taxation cases, the definition of underlying property interests is left to state law, but the consequences that attach to those interests are determined by reference to federal law.  *See* **United States v. Rodgers**, 461 U.S. 677, 683, 103 S. Ct. 2132, 2137 (1983); **Aquilino v. United States**, 363 U.S. 509, 513, 80 S. Ct. 1277, 1280 (1960).  Thus, we look to state law to determine the character of any property right Orr may have in future distributions from the Trust, but federal law determines whether or not, and at what point in time, a tax lien may attach to that property interest.  *See, e.g.*, **United States v. Bess**, 357 U.S. 51, 55-57, 78 S. Ct. 1054, 1057-58 (1958).

### A.

The principle of the **Glass City Bank** case (that a tax lien attaches to the debtor's after-acquired property until the tax liability is satisfied) was long ago extended to include the attachment of a tax lien to after-acquired distributions from a spendthrift trust.  *See* **United States v. Dallas Nat'l Bank**, 152 F.2d 582 (5th Cir. 1945) (hereinafter, **Dallas I**), *appeal after*

*remand*, 164 F.2d 489 (5th Cir. 1947), *appeal after second remand*, 167 F.2d 468 (5th Cir. 1948) (hereinafter, **Dallas III**). The precise holding of the **Dallas** opinions is the main bone of contention in the appeal of Orr's case, which involves the added feature of an intervening bankruptcy. Orr's filing for bankruptcy relief under Chapter 7 did not affect the validity of any tax lien the IRS may have had prior to the filing. Ordinarily, liens and other secured interests survive bankruptcy. *See* **Farrey v. Sanderfoot**, 500 U.S. 291, 297, 111 S. Ct. 1825, 1829 (1991); *see also* 11 U.S.C. § 522(c)(2)(B) ("Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case, except . . . a tax lien, notice of which is properly filed[.]"); **Isom v. United States (In re Isom)**, 901 F.2d 744, 745 (9th Cir. 1990) ("The liability for the amount assessed remains legally enforceable even where the underlying tax debt is discharged in the bankruptcy proceeding. A discharge in bankruptcy prevents the I.R.S. from taking any action to collect the debt as a personal liability of the debtor. . . . [T]heir property remains liable for a debt secured by a valid lien, including a tax lien."). There is no discussion in 11 U.S.C. § 541(c)(2) of liens, tax or otherwise, that attach before bankruptcy discharge. Repeatedly, courts have been willing to attach liens to post-discharge benefits despite the "fresh start"

policy of the bankruptcy scheme. *See, e.g., **Connor v. United States (In re Connor)**,* 27 F.3d 365 (9th Cir. 1994); *In re Wesche*, 193 B.R. 76 (Bankr. M.D. Fla. 1996). The IRS therefore has a valid tax lien against Orr's interest in the Trust if that lien attached before Orr's personal liabilities were extinguished in bankruptcy. The dispositive issue is, therefore, the question of whether a federal tax lien in this situation attaches to a spendthrift trust beneficiary's equitable interest in the trust itself or to each individual distribution as it is paid to the beneficiary. Both parties to this appeal claim support for their respective positions in *Dallas*.

*Dallas* involved a federal tax liability owed by Carolyn Maxwell, arising from several stock transactions. Mrs. Maxwell was a resident of England, so the government sought to enforce the tax liability by imposing a lien on her interest in a spendthrift trust, of which the Dallas National Bank was trustee. As in the customary trust arrangement, the trustee possessed legal title to the trust funds. Mrs. Maxwell received monthly income payments from the trust. This Court concluded that the government had a valid lien, and explained the result as follows:

> Mrs. Maxwell has no title to the corpus of any property other than the profits after they have accrued and have been passed to her account and made available to her by the Trustee. In other words, after "the net revenues," amounting to approximately $54 per month, accrue, or are set apart and become payable to her, such net revenues then belong to her and are then subject to the lien

-11-

of the Government for taxes, and are available as an appropriate res in a proceeding in rem by the Government to have a lien for delinquent taxes declared and enforced against such revenues.

The Government is entitled to a lien upon these monthly payments of net revenue in the hands of the Trustee, by virtue of the law as stated in 26 U.S.C.A.Int.Rev.Code, §§ 3670 and 3671.

Under the holding of [*Glass City Bank*], that the lien of the United States attaches to after-acquired property, we think that such lien will continue to be fastened on the monthly income from the trust as it becomes payable to the taxpayer.

*Dallas I*, 152 F.2d at 585 (footnote omitted). In a following appeal (*Dallas III*), Circuit Judge Edwin R. Holmes of Yazoo City, Mississippi, noted in a specially concurring opinion that:

The taxpayer is the equitable owner for life of an undivided interest in Texas realty, which under local law is not subject to seizure or sale for ordinary debts incurred by the taxpayer; but this does not mean that testamentary restraints against alienation should prevail against the fastening of a lien for federal income taxes on the taxpayer's equitable interest in the trust estate. We are, in fact, holding the contrary in this case.

*Dallas III*, 167 F.2d at 469 (Holmes, J., specially concurring). Orr emphasizes the language in *Dallas I* that "such lien will continue to be fastened on the monthly income from the trust *as it becomes payable to the taxpayer*," 152 F.2d at 585 (emphasis supplied), in support of his contention that no valid lien would exist until he actually received a distribution from the trust, and because through bankruptcy he has discharged his personal liability

for the tax, the lien can no longer continue to attach to future distributions. *See, e.g.,* **Connor**, 27 F.3d at 366. The IRS emphasizes the language in **Dallas III** indicating that the lien attaches to Orr's "*equitable interest* in the trust estate," 167 F.2d at 469 (emphasis supplied), and therefore precedes and survives Orr's bankruptcy.

The **Dallas** panels did not need to confront the question presented by Orr's case. The trust distributions paid to Mrs. Maxwell fell into the category of after-acquired property at the time she received them. There was no bankruptcy, as there is in this case, to discharge the debtor's personal liability for the taxes owed. As Mrs. Maxwell received each new distribution from the trust, a new § 6321 lien would fasten onto the distribution so long as she owed the taxes. The law was settled in **Glass City Bank** that such after-acquired property became subject to a statutory federal tax lien on the debtor's "property," and thus there was no need to decide whether the lien could have attached earlier. The **Dallas I** opinion specifically invokes **Glass City Bank** to justify its result. Thus, the opinion of Judge Holmes (which was not joined by any other judge) that the tax lien validly attached to Mrs. Maxwell's equitable interest in the trust was not necessary to the decision in that case.

**B.**

-13-

The issue addressed by Judge Holmes, specially concurring in the ***Dallas III*** appeal, is squarely presented by Orr's case, because the only way the IRS can collect from Orr's trust distributions is if the tax lien on future distributions attached before Orr's personal liability was discharged through bankruptcy. With the issue now squarely presented, fifty-one years later, we conclude that the dictum announced by Judge Holmes was correct. Texas law recognizes the validity of the Trust's spendthrift clause. Texas law acknowledges that a spendthrift trust beneficiary possesses an equitable ownership interest in the trust corpus. And Texas law respects the Trust's bestowal upon Orr of a fully vested right to receive distributions from the trust on at least an annual basis. These interests constitute "property" or "rights to property" under § 6321, even though the beneficiary does not possess total, exclusive, fee-simple ownership.

The broad scope of 26 U.S.C. § 6321, encompasses "property" in this sense, as befits that statute's purpose of tax collection, *see* ***National Bank of Commerce***, 472 U.S. at 719-20, 105 S. Ct. at 2923-24. Courts have routinely concluded that § 6321 tax liens attach to other types of equitable interests. *See, e.g.*, ***Southern Bank v. IRS***, 770 F.2d 1001, 1003, 1009-10 (11th Cir. 1985) (equitable right of redemption); ***Runkel v. United States***, 527 F.2d 914, 916 (9th Cir. 1975) (equitable interest in real property); ***United States v. Johansson***, 447 F.2d 702, 705 (5th Cir. 1971) (equitable lien);

-14-

*United States v. Klimek*, 952 F. Supp. 1100, 1112 (E.D. Pa. 1997)

(equitable ownership of real property); *Bank of Lyons v. Cavanaugh*

*(In re Cavanaugh)*, 153 B.R. 224, 228 (Bankr. N.D. Ill. 1993)

(equitable interest in a land trust).[*]

Moreover, the attachment of the lien in this case is not at odds with the Texas policy of respecting the wishes of the creator of a spendthrift trust by enforcing the trust's anti-alienation provisions. The wishes of the creator of the spendthrift trust are to ensure a stream of income for the beneficiary by preventing the beneficiary from leveraging present purchasing power out of future payments. The state may (and Texas does) think it advisable to

---

[*] *Texas Commerce Bank Nat'l Ass'n v. United States*, 908 F. Supp. 453 (S.D. Tex. 1995), relied upon by Orr, is not to the contrary. *Texas Commerce Bank* involved an attempt by the IRS to levy upon the interest of Ellanor Ann Fondren in a trust in which payments to her were left to the sole discretion of the trustee until the year 2002. The court ruled that distributions made to Fondren in trustee's discretion did not violate the levy because Fondren had no interest to which the levy could attach. Unlike the the spendthrift trust in this case, the discretionary nature of the trustee's power in *Texas Commerce Bank* meant that the beneficiary had no property or rights to property to which the levy could attach. And although the trust provided that Fondren would be entitled to future income distributions that right was "clearly a contingent, non-vested, and non-determinable right" at the time the IRS imposed its levy.

We also note that it is not clear from the *Texas Commerce Bank* opinion why the *Glass City Bank* and *Dallas* principles of tax liens' attachment to after-acquired property, including distributions from a spendthrift trust, would not have applied to the trustee's distributions to Fondren. In any case, *Texas Commerce Bank* does not support Orr's contention that a vested right to future payments from a spendthrift trust cannot be property or rights to property susceptible to attachment by a tax lien.

-15-

respect the wishes of the creator of the trust by enforcing the spendthrift term. Creditors in Texas are on notice of the unenforceability of any loan agreement with a trust beneficiary that purports to grant an interest in future distributions from a spendthrift trust. The risk of default is thereby placed on the shoulders of creditors who rely on the spendthrift trustee's income stream.

The government does not stand in the shoes of an ordinary creditor seeking to attach distributions from a spendthrift trust. Consistent with the imperative nature of tax collection, § 6321 gives the government an advantage over ordinary creditors in collection matters. Moreover, the rationale for shifting the risk of default to creditors, who ought to examine the terms of a trust before agreeing to accept the right to future distributions as collateral, does not apply to the government, which imposes the income tax unilaterally and without reference to spendthrift protections. The wishes of the creator of a spendthrift trust cannot overcome the government's need to collect tax and a spendthrift trust beneficiary's duty to pay tax. It does not make sense to permit the spendthrift trust to be a vehicle for tax immunity.

Though not dispositive of the meaning of "property and rights to property" under § 6321, we further note that Texas law supports the classification of Orr's interest in the Trust as "property." In determining the ordinary meaning of the term "property" for the

purposes of statutory construction, the Supreme Court of Texas has characterized it as extending to "every species of valuable right and interest." *State v. Public Util. Comm'n*, 883 S.W.2d 190, 200 (Tex. 1994) (citing *Womack v. Womack*, 141 Tex. 299, 172 S.W.2d 307, 308 (1943)); *cf*. Tex. Prop. Code Ann. § 111.004(12) (Vernon 1995) (for purposes of the Trust Code: "'Property' means any type of property, whether real, tangible or intangible, legal, or equitable. The term also includes choses in action, claims, and contract rights, including a contractual right to receive death benefits as designated beneficiary under a policy of insurance, contract, employees' trust, retirement account, or other arrangement.").

We are aware of authority suggesting that "[i]n enforcing § 6321, appellate courts have interpreted 'property' or 'rights to property' to mean state-law rights or interests that have pecuniary value and are transferable." *Drye Family 1995 Trust v. United States*, 152 F.3d 892, 895 (8th Cir. 1998) (citing *United States v. Stonehill*, 83 F.3d 1156, 1159-60 (9th Cir. 1996); *In re Kimura*, 969 F.2d 806, 811 (9th Cir. 1992); *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1171-72 (6th Cir. 1990); *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354, 357-58 (3d Cir. 1986); *Southern Bank v. IRS*, 770 F.2d 1001, 1005 (11th Cir. 1985)), *cert. granted on other grounds*, 119 S. Ct. 1453 (1999). We think this test takes an unnecessarily narrow view of the scope of

§ 6321.  In particular, we know of no controlling authority which compels the conclusion that transferability is a necessary incident of "property and rights to property" under the statute.  Indeed, a persuasive scholarly treatment of the question comes to the opposite conclusion.  *See* Note, *Property Subject to the Federal Tax Lien*, 77 *Harv. L. Rev.* 1485, 1485-87 (1964).

The terms "property and rights to property" have no statutory definition.  This Court has noted in the past that in crafting the tax lien statute, "Congress did not attempt to define the commercial cosmos.  Rather, it was perfectly willing to let contemporary transactions be analyzed to determine whether or nor the delinquent taxpayer had any part of a bundle of rights of commercial value, to which the tax lien would then attach." **Randall v. H. Nakashima & Co., Ltd.**, 542 F.2d 270, 278 (5th Cir. 1976).  And it bears repeating that the Supreme Court has held that "Congress meant to reach every interest in property that a taxpayer might have."  **National Bank of Commerce**, 472 U.S. at 719, 105 S. Ct. at 2924.  Each case requires individual consideration, and we conclude that despite the nontransferability of a spendthrift trust beneficiary's interest in the trust, Orr's interest still possesses sufficient characteristics of "property" or "rights to property" to fall within the scope of § 6321.

With reference to Texas law, we conclude that at the time the liens were filed, Orr possessed equitable and legal rights to

future income distributions from the Trust. With reference to federal law, we conclude that those rights constituted "property" or "rights to property" subject to attachment pursuant to § 6321. Because the federal tax lien attached to Orr's rights to future payments at the time of the filing of the lien, Orr's subsequent bankruptcy does not affect the validity of the lien against Orr's equitable ownership of the Trust and legal right to receive income distributions from the Trust. The tax lien is therefore valid against future income distributions.

## IV.

In sum, we conclude that we may exercise appellate jurisdiction in this case. The subject matter of the appeal is a discrete issue within a larger bankruptcy case, which was presented in the context of an adversary action between the parties. The order of the district court settled the sole issue in contention. Jurisdiction is proper under 28 U.S.C. § 158(d).

Furthermore, the IRS has a valid lien against future income distributions to Orr from the Trust. Under state law, Orr possesses an equitable interest in the trust corpus and legal entitlement to future income distributions from that trust. These interests constitute "property" or "rights to property" to which a 26 U.S.C. § 6321 tax lien may attach.

**AFFIRMED.**