**Twilla Jordan DAVID**

v.

**William M. KATZ, et al.**

**No. Civ.A. 94 CV 3989.**

United States District Court,
E.D. Louisiana.

Feb. 11, 2000.

David Gregory Koch, Watson, Blanche, Wilson & Posner, Baton Rouge, LA, Barry F. Viosca, Barry F. Viosca, Attorney at Law, Metairie, LA, Montie S. Day, Day Law Offices, Alameda, CA, for Twilla Jordan David, Jan Katz, Robert A Katz, Walda Katz Fishman, plaintiffs.

Dennis Michael Dendy, Amato & Creely, Gretna, LA, Donald Edward Theriot, Donald E. Theriot, Attorney at Law, New Orleans, LA, for William Mayer Katz, Sr., defendant.

John M. Bilheimer, U.S. Department of Justice, Tax Division, Washington, DC, Eddie Jack Jordan, Jr., U.S. Attorney's Office, New Orleans, LA, for United States of America, intervenor–defendant.

Lance J. Arnold, Baldwin & Haspel, LLC, New Orleans, LA, Arthur C. Pulitzer, pro se, Metairie, LA, for Arthur C Pulitzer, intervenor–defendant.

Louis Joseph Leo, Louis Joseph Leo, Attorney at Law, APLC, Metairie, LA, for Gary Barocco, intervenor–defendant.

Robert P. Charbonnet, Jr., Charbonnet Law Firm LLC, New Orleans, LA, for Barto Marble Co. Inc., intervenor–defendant.

## ORDER AND REASONS

LEMMON, District Judge.

For the following reasons, **IT IS OR-DERED** that the "Motion For Partial Summary Judgment And Disbursement Of Funds" (Doc. # 68) of Twilla Jordan is **GRANTED**. The court makes the following finding on the ranking of creditors.

### BACKGROUND

This suit concerns the claims of multiple creditors, including the Internal Revenue Service ("IRS"), to the one-third interest of William Katz ("William") in the Alice Mayer Katz Usufructuary Trust (the "Trust"). Plaintiff, Twilla Jordan ("Jordan"), filed a "Petition to Make Judgment Executory And For Garnishment" in Louisiana state court, asserting her rights to William's interest in the Trust pursuant to an assignment from William. Walda Mayer Katz Fishman ("Walda"), Jan Katz, and Robert A. Katz ("Robert")[1] intervened and named as a defendant the IRS which had filed various federal tax liens. The IRS removed the case to federal court. Jordan has moved for partial summary judgment ranking the competing creditors' claims in William's interest in the Trust. Jordan argues that, as a matter of law, her claim outranks the claims of all other creditors.

### FACTS

The Trust Instrument was executed in 1960. The settlor of the Trust was Bertha L. Mayer. Bertha's daughter, Alice Mayer Katz ("Alice"), was the usufructuary beneficiary, and Alice's children, William, Robert and Walda were each one-third naked owner beneficiaries. Alice's usufruct lasted for her lifetime. The parties assert that the Trust terminated on Alice's death in 1994, and the record shows that a Magistrate Judge granted an unopposed motion for summary judgment recognizing that the Trust terminated in 1994.[2]

Beginning in approximately 1988, Jordan, who was romantically involved with William, made loans to William to pursue various real estate ventures. After some of the loans had been advanced, Jordan requested that William post security. William executed a $450,000 promissory note secured by an "Assignment of Interest In Trust, Trust Corpus, Revenues, Proceeds And Distributions" (the "Assignment") dated February 8, 1989, purportedly securing past and future loans. The Assignment provides that it is intended "as security for the payment unto Assignee [Jordan] of all sums advanced or to be advanced ... together with interest, costs and attorney's fees," and assigns to Jordan, with full subrogation, all of William's "right, title and interest in and to the Alice Mayer Katz Usufructuary Trust." (the "Trust"), the Trust corpus, and any revenues, proceeds and/or distributions therefrom.... Assignment, at 2.

The Assignment was expressly subordinated to previous assignments in favor of Alice, Walda, and the Trust. Assignment, ¶ 3. There is no dispute that the subordination had its stated effect of making Jordan's assignment inferior in ranking to the previous assignments. After the execution of the Assignment, Jordan advanced an additional $118,500, and William executed a promissory note in that amount. In April, 1990, one year after the assignment, Jordan obtained a judgment against William for $568,500, with interest, attorneys fees and costs.

The IRS filed tax liens against William's property on October 11, 1989 ($24,115.00),

---

1. Robert and Walda appear as beneficiaries of the Trust, co-executors of Alice Mayer Katz's estate, and heirs of Alice Mayer Katz. Jan Katz and Robert intervened as trustees.

2. According to the Trust Instrument itself, however, Alice's death did not terminate the Trust but terminated only her usufructuary interest and provided that "the use of the trust funds ... and distributions ... shall be made to the naked owner beneficiary." Trust Instrument, ¶ XL.

February 16, 1990 ($92,618.00) and September 27, 1990 ($33,953.00).[3] Jordan asserts that her assignment outranks the IRS liens because it was perfected first. The IRS argues that, although Jordan's assignment is "first in time," its liens rank ahead of Jordan's assignment because William's interest in the Trust property was not "choate" under federal law at the time of the Assignment.

## DISCUSSION

### The Validity Of William's Assignment

The Louisiana Trust Code provides: "A beneficiary may transfer or encumber the whole or any part of his interest unless the trust instrument provides to the contrary." La.Rev.Stat. § 9:2001. The Trust Instrument specifically limits the voluntary or involuntary alienation or encumbrance rights of the usufructuary beneficiary. Trust Instrument, ¶ V. It does not address the alienation or encumbrance rights of the naked owner beneficiaries. Therefore, under § 2001 of the Trust Code, William was not prevented from assigning his interest in the Trust.

An assignment is a transfer of property, rights or interest. *See* La.Civ.Code art. 2642. Under Louisiana law, "All rights may be assigned [and the] assignee is subrogated to the rights of the assignor against the debtor." *Id.* William's interest in the Trust vested upon creation of the Trust. La.Rev.Stat. § 9:1971 (formerly § 9:1921); *Succession of Stewart,* 301 So.2d 872 (La.1974). The Assignment specifically instructs the trustees to pay to Jordan any and all distributions that would be due to William, up to the amount of his indebtedness. *See* Assignment, ¶ 10. Thus, upon William's assignment of his

interest in the Trust, Jordan stepped into William's shoes as a beneficiary of the Trust to the extent of William's indebtedness. *See Read v. United States, Dep't of Treasury,* 169 F.3d 243, 250 (5th Cir.1999) (applying Louisiana law).

### Ranking Of Liens: IRS vs. Security Interest Holders

■ Absent legislation to the contrary, the "first in time, first in right" ranking principle applies to the IRS as to other creditors asserting liens. *United States v. City of New Britain, Conn.,* 347 U.S. 81, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). Upon the nonpayment of taxes after demand, the amount of taxes, penalties, interest and costs "shall be a lien in favor of the United States." 26 U.S.C. § 6321. Generally, a tax lien is effective from the date of assessment. 26 U.S.C. § 6322. However, where the IRS is competing against certain creditors, including a holder of a "security interest," its lien is not effective until notice of the lien is filed in the public records where the attached property is situated. 26 U.S.C. § 6323(a) and (f).[4] Although under Louisiana law an assignment has the effect of transferring the interest assigned, there is no dispute that, by virtue of the Assignment, Jordan held a "security interest" as defined by federal law, and therefore the effective date of the IRS liens for ranking purposes is the date of filing rather than the date of assessment.

"[T]he filing of notice renders the federal tax lien extant for 'first in time' priority purposes *regardless of whether it has yet attached to identifiable property." United States v. McDermott,* 507 U.S. 447, 113 S.Ct. 1526, 1530, 123 L.Ed.2d 128 (1993)

3. Although additional loans secured by the Assignment were advanced to William after the IRS filed its liens, the IRS has not attempted to distinguish these loans from the earlier loans, apparently because the earlier loans exceeded the value of William's interest in the Trust. The issue of ranking with respect to the later loans is not before the court at this time.

4. 26 U.S.C. § 6323(a) provides:

The lien imposed by section 6321 shall not be valid as against any purchaser [or] holder of a security interest ... until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

(emphasis added, interpreting § 6323(a)); 26 U.S.C. § 6323(a). On the other hand, the rights of a security interest holder must be perfected or "choate" under federal law in order to compete with a tax lien. Under federal law a security interest is choate only when the following three things are established: "[1] the identity of the lienor, [2] the property subject to the lien, and [3] the amount of the lien." *New Britain,* 74 S.Ct. at 369. The primary purpose of the choateness requirement is to protect the IRS from subordination to mere contingencies and was first articulated by the Supreme Court in *United States v. Security Trust & Sav. Bank of San Diego,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).[5]

The IRS concedes that Jordan has satisfied the first ("identity of lienor") requirement and the third ("amount") requirement of *New Britain,* and argues only that the second ("property") requirement is not met. Response of the United States to Plaintiff's Motion for Summary Judgment, at 5. The IRS analogizes the present case to *McDermott,* in which a creditor held a judicial mortgage, which by law applied to all of the debtor's immovable property owned at the time of the perfecting of the judicial mortgage or "thereafter acquired". *McDermott,* 113 S.Ct. at 1527. Subsequent to the filing of the judicial mortgage, the IRS perfected a tax lien under § 6323. *Id.* Later, the debtor acquired immovable property. *Id.* The Supreme Court held that the judicial mortgage was not "perfected" under federal law as to property acquired after the judicial mortgage was filed. The property was not "established"

sufficiently for the judicial mortgage to attach thereto. *Id.* at 1528–29.

In the present case, the IRS argues that the "property" William assigned was the *property held by the Trust* rather than William's interest in the Trust itself. It claims that William had no interest in the property held by the Trust at the time of the Assignment, and that therefore, William's interest was not choate, or "established" in the terminology of *New Britain,* and did not become choate until the termination of the Trust when the Trust's assets were distributable. The court must determine whether the interest William assigned was choate when the Assignment was made in order to determine whether Jordan's security interest was choate under federal law.

### The Nature of William's Assigned Interest

■ The extent of a tax debtor's interests in property is determined by state law, but lien priorities and other tax consequences related to those interests are determined by federal law. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Citizens & Southern Nat'l Bank,* 538 F.2d 1101, 1105 (5th Cir.1976). Although Louisiana law determines the nature and extent of William's interest in the Trust, and consequently Jordan's interest acquired through the Assignment, opinions from other jurisdictions are helpful in explaining, by distinction and analogy, the ranking issues addressed in the present case.

In *Read,* 169 F.3d 243, the court addressed the nature of a beneficiary's inter-

---

5. In *Security Trust,* a creditor claimed that a California statutory pre-judgment lien of attachment primed a subsequently perfected federal tax lien. This particular California lien, which appears similar to a pre-judgment Writ of Attachment or of Sequestration as provided for under La.Code Civ.P. art. 3502, gave the creditor no right to proceed against the property unless he obtained a judgment within a period of three years, subject to various California statutory extensions. The Supreme Court of California had character-

ized this lien as " 'only a potential right or a contingent lien.' " *Id.* at 113 (citation omitted). The Supreme Court in *Security Trust* stated: "Numerous contingencies might arise that would prevent the lien from ever becoming perfected.... Thus the attachment lien is contingent or inchoate—merely a *lis pendens* notice that a right to a perfect lien exists." *Security Trust,* 71 S.Ct. at 113. Accordingly, the Court held that the IRS lien was superior to the competing inchoate lien.

est in a trust created under Louisiana's unique Trust Code. The *Read* court observed that, under the Trust Code,

> A trust is the *relationship* resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. In thus defining a trust, Louisiana stands apart from common law jurisdictions. With title to trust property vested in the trustee alone, only the trustee has a civilian "real right" in trust property. Conversely, *the beneficiary has no title to or ownership interest in trust property, but only a civilian "personal right," vis-a-vis the trustee, to claim whatever interest in the trust relationship the Settlor has chosen to bestow.*

*Read,* 169 F.3d at 248 (emphasis added) (citing *Reynolds v. Reynolds,* 388 So.2d 1135, 1142 (La.1979)); La.Rev.Stat. § 9:1731.[6] By the plain terms of the Assignment, the interest assigned by William is the same as the interest described in *Read,* i.e., all of William's right "to claim whatever interest in the trust relationship the Settlor has chosen to bestow."

The *Read* court further explained that the claims of creditors, including the IRS, against a beneficiary's trust interest "affect only [the debtor's] *interest in the Trust and do not attach directly to the trust estate." Read,* 169 F.3d at 254 (emphasis added). "The only thing the court may authorize [a beneficiary's creditor] to seize is the beneficiary's personal right— his interest in the trust relationship. When that is done, the creditor steps into the shoes of the beneficiary—whatever size and shape they may be, as dictated by the trust instrument." *Read,* 169 F.3d at 250.

In *Read,*[7] the court required the trustees to make future distributions to the beneficiary's creditors only when the trustees deemed that the beneficiary would be entitled to those distributions under the terms of the trust instrument. *Read,* 169 F.3d at 254–55. The court thus recognized that the beneficiary (and through him, his creditors) had present rights in the trust, including the right to future distributions of income and principal, even though the future distributions were available only when the trustees, in their sole discretion, decided to make them.[8]

In *In re Orr,* 180 F.3d 656 (5th Cir. 1999), the court characterized a creditor's claim to a trust beneficiary's interest in a manner consistent with *Read.* In *Orr,* the tax debtor, a beneficiary of a Texas trust, argued that an IRS lien attached only to each distribution from the trust, so that the IRS could not reach distributions made after the debtor filed for bankruptcy. The court disagreed, and emphasized that the "property" to which a federal tax lien attached was the trust beneficiary's equitable "interest in the trust itself [but not] each individual distribution as it is paid to the beneficiary." *Orr,* 180 F.3d at 661.

---

**6.** *But cf.* 2 A.N. Yiannopoulos *Louisiana Civil Law Treatise—Property,* § 152 (1991) (espousing "modern trends ... according to which the beneficiary of a trust owns the property subject to trust").

**7.** Although *Read* concerned issues of involuntary alienation and certain exceptions to "spendthrift trust" rules, *Read*'s treatment of the nature of the beneficiary's interest and the interest of the beneficiary's creditors is instructive in the analysis of this case.

**8.** Consistent with *Read* is the decision in *Hammes v. Tucson Newspapers, Inc.,* 324 F.2d 101 (9th Cir.1963). In *Hammes,* a seller of real estate assigned to his creditor the principal payments from the sale, which were due

in future years. The IRS perfected tax liens against the seller-assignor after the assignment was made but before any payment was due. *Id.* at 102. The court held that the creditor-assignee's rights were choate and took precedence over the IRS liens, reasoning that: "The fact that the property subject to the lien is a present right to receive money *in futuro* does not make the lien inchoate, at least where the right is unconditional." *Hammes,* 324 F.2d at 103. In *Hammes,* the debtor's, and subsequently the assignee's, present right to receive future proceeds is analogous to William's, and thus Jordan's, present right to receive future trust distributions.

*Orr* used the common law concept of "equitable interest" in characterizing the beneficiary's interest in the trust. The court recognizes that under Louisiana law "there is neither need nor room for a fragmentation of ownership into components of legal title and equitable ownership." 2 A.N. Yiannopoulos *Louisiana Civil Law Treatise—Property*, § 236 (1991). Rather, in accordance with *Read* and Louisiana's civilian principles, it is more correct to speak of the beneficiary's interest as a right encumbering property. *Id.* at n. 17; *Read,* 169 F.3d at 254. The significance of *Orr* is not its characterization of the beneficiary's interest, however, but its affirmation of the principle that the IRS lien attaches only to the beneficiary's interest rather than directly to the property held by the trust. *Read* follows civilian thought in characterizing the beneficiary's interest as a "right" and is consistent with *Orr* in reasoning that a lien attaches only to the beneficiary's interest, however it may be characterized.

■ Under *Read* and *Orr,* the "property" that William assigned was not the property held by the Trust, but rather his interest in the Trust. In arguing that *McDermott* applies in this case, the IRS focuses on the individual items of property held by the Trust while disregarding the "property" at issue, i.e., William's present and vested interest in the Trust itself. The *McDermott* debtor, unlike William, had no "present" right of any kind to the after-acquired property when the judicial mortgage was perfected.[9] William's interest in the Trust was "established" for purposes of choateness at the time of the Assignment. At the time of the Assignment, Jordan stepped into William's shoes and into his rights and interest in the Trust. When the IRS attempted to do the same, the shoes were already occupied.

## CONCLUSION

William's interest in the Trust was choate at the time of the Assignment. The Assignment was perfected prior to the filing of the IRS liens. Because the Assignment pre-dated the IRS's liens, the first-in-time rule applies, and Jordan's interest outranks the IRS liens. Accordingly, the claims of the creditors are to be satisfied out of William's one-third interest in the Trust in the following order: First, the assignments to Alice, Walda and the Trust; second, the Assignment to Jordan; and third, the liens of the IRS.

---

9. *In re Rosenberg's Will,* 62 Misc.2d 12, 308 N.Y.S.2d 51 (Surr.Ct.1970), held that the beneficiary's principal interest in a trust was not "choate". Without expressing concurrence with that court's holding, *Rosenberg* is distinguishable from the present case. In *Rosenberg,* the trust provided that the beneficiary had no interest in the principal of the trust unless she reached age 50. If she died before age 50, another person would be substituted for her, and the property would never pass to the beneficiary herself. Therefore, when the beneficiary executed assignments before reaching fifty, the court found that her interest, and thus her assignees' interests, were "contingent" and not choate with regard to ranking against a tax lien because the beneficiary was assigning "a truly future interest" rather than "present rights involving future consequences." *Rosenberg,* 308 N.Y.S.2d at 58.